451 P.2d 316

O. T. FOUNTAIN, Thomas E. Cady, George Austin, J. Robert Jensen, Ferdy Sant and Alfred J. Duncan, as members of the Arizona State Board of Pharmacy, Appellants,

v.

Herbert R. OELSCHLEGEL, Appellee.

No. 1 CA–CIV 556.

Court of Appeals of Arizona.

March 10, 1969.

Rehearing Denied March 27, 1969.
Review Denied April 22, 1969.

Darrell F. Smith, Former Atty. Gen., Gary K. Nelson, Atty. Gen., by T. A. Miller and John V. Riggs, Asst. Attys. Gen., for appellants.

Caine, Brigham & Hocker, by R. Kelly Hocker, Tempe, for appellee.

DONOFRIO, Chief Judge.

The appellee, Herbert R. Oelschlegel, has been a licensed pharmacist in Arizona since 1933. In 1966 a complaint was filed by the Secretary of the Arizona State Board of Pharmacy, praying that the Board take appropriate action to revoke or suspend the license held by Herbert R. Oelschlegel. The complaint alleged that on three separate occasions the appellee had violated A.R.S. § 32–1964 and § 32–1965. These violations constituted acts of gross immorality, a ground for revocation or suspension of a license pursuant to A.R.S. § 32–1927, subsec. A, par. 3.

The facts later came out that the appellee was also licensed to practice in Texas. In 1963 he was convicted on three counts of violating the "Food, Drug and Cosmetic Act." All three counts involved acts done while the appellee was transacting business in Texas. They were as follows:

1. That on February 27, 1962, appellee refilled for one THEODORE L. ROTTO, a written prescription for a number of Chlorothiazide tablets without obtaining authorization from the original prescriber.

2. That on March 6, 1962, appellee sold to THEODORE L. ROTTO a number of Glutethimide tablets without a prescription therefor.

3. That on March 6, 1962, appellee sold to THEODORE L. ROTTO a number of Meprobamate tablets without a prescription therefor.

The three violations constituted misdemeanors under the applicable statute. 21 U.S.C. § 333(a).

It was these exact same three misdemeanors which the State Board alleged were violations of A.R.S. § 32–1964 and § 32–1965, and constitute acts of gross immorality. The State Board now admits that these criminal acts were outside the jurisdiction of the State and were not violations of the Arizona Revised Statutes. They still claim, however, that the acts, evidenced by the conviction, were sufficient grounds for the State Board to investigate the morality of the appellee, and revoke or suspend his license to practice in the State of Arizona if he was found to be guilty of gross immorality.

The appellee petitioned the Superior Court for a writ of prohibition to prohibit the State Board of Pharmacy from taking any further action in the matter. An alternative writ of prohibition temporarily restraining the Board and an order to show cause why the writ should not be made permanent was issued. After the hearing before the judge a formal judgment granting the writ was filed and an appeal from the judgment was duly taken by the appellants as members of the Arizona State Board of Pharmacy.

The question presented to this Court is simply this: Did the trial court abuse its discretion in granting the writ? In answering this, we feel that it is necessary to decide two issues. First, did the complaint allege causes for revocation within the jurisdiction of the Board? Second, is the term "gross immorality" as used in A.R.S. § 32–1927 so vague as to be unconstitutional, and if not, would its application in this case be an improper application of the statute?

## SUFFICIENCY OF COMPLAINT

Our Arizona Legislature has seen fit to put into the hands of the State Board of Pharmacy the power to revoke or suspend a certificate of registration or license of any licentiate in pharmacy. The power to revoke or suspend is limited by the fact that this can only be done on certain grounds. The statute states:

"A. The certificate of registration or license of any licentiate in pharmacy or pharmacy interne may be revoked or suspended by the board of pharmacy when:

"1. The registration is proved to the board to have been obtained by fraudulent means.

"2. The registrant has been convicted of a felony.

"3. The registrant is found by the board to be guilty of gross immorality.

"4. The registrant is addicted to the use of liquor or drugs to such a degree as to render him unfit in the opinion of the board to manufacture, compound, sell or dispense drugs and medicines." A.R.S. § 32–1927.

It is the law in Arizona that in circumstances such as these it is not necessary that the grounds set out in a complaint be as precise or with such particularity as the courts require in either criminal or civil actions. The proceedings before the Board are more or less informal and, as such, it is sufficient that the party being charged be notified of the nature and character of the charges so that he may prepare himself. Du Vall v. Board of Medical Examiners, 49 Ariz. 329, 66 P.2d 1026 (1937); Garlington v. Smith, 63 Ariz. 460, 163 P.2d 685 (1945).

Even though the hearings are informal, this does not mean that the State Board can ignore the due process requirements of notice. The proceedings, although civil in nature, have a punitive character since the agency can prohibit a person from practicing his profession. It appears in this case that the State Pharmacy Board is the accuser, a party to the proceedings, and ultimately makes the decision on the record. It therefore becomes necessary that all procedural safeguards be taken to protect the rights of the accused. It is for this reason that the courts are very strict in determining that the accused have proper notice of the proceedings, and adequate knowledge of the allegations against him so that he may prepare his defense. Shively v. Stewart, 65 Cal.2d 475, 55 Cal.Rptr. 217, 421 P.2d 65 (1966).

In this case the Board's complaint has three counts. Each count alleges a conviction under a federal statute which, if done in Arizona, would also have been a violation of Arizona statutes. Each count then alleges that the act for which the appellee was convicted constitutes an act of gross immorality and was therefore a ground for revocation or suspension of the license under A.R.S. § 32–1927. It is of course true that not every violation of the criminal law constitutes an act of gross immorality. The State Legislature, however, has decided that it is up to the State Pharmacy Board to act as a trier of fact and determine if certain acts, as applied to licensed pharmacists, are grossly immoral. A complaint alleging acts and concluding that these acts are grossly immoral is sufficient to give the State Board of Pharmacy jurisdiction to determine if these acts make the registrant guilty of gross immorality.

In the case of Ladrey v. Comm. On Licensure To Practice, Etc., 104 U.S.App. D.C. 239, 261 F.2d 68 (1958), the Washington D.C. Code permitted the District Court to revoke any license upon a showing that the licentiate was guilty of misconduct. The complaint in that case included a criminal statute which the licentiate purportedly had violated. Similarly, in the case before this Court, the State Board included in its complaint the Arizona statutes which define the immoral acts in which the appellee has purportedly engaged. The court in the Ladrey case found that the "misconduct charge has been spelled out with sufficient clarity in the words of the criminal statute which define the offense." We hold that the appellants in this case, by stating in the complaint the fact that the appellee was accused of being guilty of gross immorality and that the acts constituting gross immorality were acts which, if done in Arizona, would have been violations of the Arizona statutes, and then listing those statutes, made the complaint sufficient to inform appellee of what acts the Board considered were immoral. This complaint also gave the Board jurisdiction to determine if those acts did in fact occur, and if so, were they evil enough to be considered grossly immoral.

## "GROSS IMMORALITY"

The appellee feels that any attempt to equate "gross immorality" with a mis-

demeanor conviction is an invalid enlargement of the statute. We again repeat that a criminal conviction does not by itself mean that the person is guilty of gross immorality. In this case that would be a question for the State Board of Pharmacy, the trier of fact, to determine. There are several cases which point out that, independent of whether or not the acts were felonious, the acts may still be considered acts of gross immorality.

In the case of Seitz v. Ohio State Medical Board, 24 Ohio App. 154, 157 N.E. 304 (1927), a doctor was convicted of illegally trafficking in narcotic drugs. Later the State Medical Board revoked his certificase to practice medicine. His conviction was considered evidence of gross immorality. In the Seitz case his conviction was considered a felony, but the court pointed out that even if the conviction was not a felony, the facts upon which that conviction was based would have been such gross immorality as to have required the revocation of his certificate.

■ In a more recent case the Court of Civil Appeals of Texas construed a statute which gave a board the power to suspend the license of any optometrist who was guilty of "gross immorality". That statute, like ours, did not define the term, "gross immorality". The court in that case found it to mean "a course of conduct so reprehensible and revolting as to shock the sensibility of reasonable men." Texas State Board Of Examiners In Optometry v. Lane, 306 S.W.2d 212 (1957). It must be agreed that dispensing drugs without a prescription may, although not necessarily, be such an activity which could be considered reprehensible and revolting. The appellants, we feel, have jurisdiction to determine whether the acts in question constitute such a course of conduct, and therefore is not an invalid enlargement of the powers of the State Board of Pharmacy.

■ This is not an unconstitutionally vague statute. In construing our Contributing to the Delinquency of a Minor statute,

the Supreme Court felt that the words "any act which tends to debase or injure the morals, health or welfare of a child", A.R.S. § 13–821, subsec. C, was sufficiently clear to apprise men of ordinary intelligence of the conduct which the statute prohibited. Brockmueller v. State, 86 Ariz. 82, 340 P.2d 992 (1959). In a more recent case the Arizona Supreme Court, quoting from a United States Supreme Court decision, reiterated that the test is whether or not men of common intelligence could necessarily guess at the meaning and application of the statute. Huerta v. Flood, 103 Ariz. 108, 447 P.2d 866 (1968); Connally v. General Construction Co., 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322 (1925).

The Arizona Supreme Court has stated that the words of a statute are to be given their ordinary meaning unless it appears from the context or otherwise that a different meaning is intended. Huerta v. Flood, supra; State v. Miller, 100 Ariz. 288, 413 P.2d 757 (1966); State v. Curry, 97 Ariz. 191, 398 P.2d 899 (1965). It appears to us that the Legislature listed four grounds upon which any licentiate in pharmacy may have his license revoked or suspended. One of these is gross immorality. We feel this is sufficiently clear to apprise any pharmacist of the course of conduct he must follow if he wishes to keep his license.

We therefore hold that the complaint was sufficient to apprise the appellee of what acts the Board thought were immoral. We further hold that it would not be an invalid enlargement of the statute for the Board to determine that these acts were grossly immoral and thus permit a revocation or suspension of the appellee's pharmacy license. By this opinion we do not hold that the Texas sales were necessarily acts of gross immorality. Our holding is that after a full hearing before the Appellant Board, it is conceivable that the evidence will disclose that the Texas sales were conducted under such circumstances that they were in fact acts of gross immorality. It is also felt that the statute in question, § 32–1927, is within the Constitutional guidelines set

**240**

out by the Arizona State Supreme Court and the United States Supreme Court. It therefore follows that the order restraining the State Board of Pharmacy was an abuse of discretion by the trial court, and the order is reversed.

STEVENS and CAMERON, JJ., concur.