PHILIP G. ESPINOSA, P.J., and WILLIAM E. DRUKE, Judge *, concur.

131 P.3d 480

**William Arthur CURTIS,**
**Plaintiff/Appellant,**

v.

**Elaine RICHARDSON, Commissioner Arizona Department of Real Estate; Arizona Department of Real Estate, Defendants/Appellees.**

**No. 1 CA–CV 04–0827.**

Court of Appeals of Arizona,
Division 1, Department B.

March 23, 2006.

Review Denied June 27, 2006.

---

* A retired judge of the Arizona Court of Appeals authorized and assigned to sit as a judge on the Court of Appeals, Division Two, pursuant to Arizona Supreme Court Order filed December 6, 2005.

Weil & Weil P.L.L.C. By John A. Weil, Lori A. Butler, Yuma, Attorneys for Plaintiff/Appellant.

Terry Goddard, Attorney General By Mary E. Kosinski, Assistant Attorney General, Randy D. Delgado II, Assistant Attorney General, Phoenix, Attorneys for Defendants/Appellees.

## OPINION

LANKFORD, Judge.

¶ 1 William A. Curtis appeals from the superior court's judgment affirming the denial of a real estate salesperson's license. The issues are: (1) Did the superior court improperly deny a change of venue? (2) Did the superior court improperly deny Curtis an evidentiary hearing? (3) Did the superior court err by affirming the Administrative Law Judge's ("ALJ") refusal to change venue? (4) Was the administrative decision upholding the refusal of the Arizona Department of Real Estate ("Department") to issue a license arbitrary and an abuse of discretion? Finding no error, we affirm.

¶ 2 The relevant facts follow. In May 2003, Curtis applied for a real estate salesperson's license. The Department notified Curtis that it intended to deny his application because he did not meet the qualifications for a license. The conclusion was based in part on prior felony and misdemeanor convictions. Curtis appealed, and the Department scheduled a hearing at the Office of Administrative Hearings in Phoenix.

¶ 3 Curtis moved to change the venue to Yuma County, where he resided. He asserted that it was unreasonable to expect his witnesses to travel to Phoenix and that the lack of live testimony would prejudice him. The ALJ denied the change of venue, and stated that Curtis could move to have witnesses testify by telephone.

¶ 4 At the hearing, Curtis was represented by counsel, and seven witnesses testified on his behalf. He submitted affidavits and letters from ten other persons. Evidence showed that between 1987 and 1996 Curtis had been convicted of several crimes. Moreover, Curtis failed to maintain sobriety, consuming alcohol as recently as June 2000.

¶ 5 The ALJ recommended that the Commissioner uphold the Department's decision to deny a license. The Commissioner adopted the ALJ's factual findings, legal conclusions, and recommended decision.

¶ 6 Curtis appealed to the Maricopa County Superior Court and requested a jury trial, a trial de novo, and an evidentiary hearing. He also moved for a change of venue to Yuma County. The court found no good cause for a jury trial because the administrative hearing had been recorded and a trial de novo was unnecessary. The court denied the change of venue as moot, and the court found no good cause for an evidentiary hearing because Curtis had not shown "that the evidence he seeks to introduce ( [he] does not identify or describe that evidence) is of such a character as would be calculated to have changed the decision of the [ALJ] or the agency decision." After oral argument, the court found sufficient evidence to support the Department's decision and entered judgment.

¶ 7 Curtis timely appealed. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12–913 (2003) and 12–120.22(A) (2003). Curtis raises several issues on appeal. We will address each in turn.

¶ 8 Curtis first contends that the superior court improperly denied a change of venue. Curtis filed a complaint for judicial review of the administrative decision in the Maricopa County Superior Court. Curtis then moved pursuant to A.R.S. § 12–406 (2003) to change venue to Yuma County, and the court denied the motion to change venue as moot. We review the superior court's ruling on a motion to change venue brought pursuant to A.R.S. § 12–406 for an abuse of discretion. *Rutledge v. Ariz. Bd. of Regents,* 147 Ariz. 534, 553, 711 P.2d 1207, 1226 (App. 1985).

¶ 9 The superior court did not abuse its discretion by denying the change of venue. Section 12–406(B)(2) provides that venue may be changed when "the convenience of witnesses and the ends of justice would be promoted by the change." A.R.S. § 12–406(B)(2). To support his motion to change venue, Curtis argued that he never resided in Maricopa County, the case had no connection with Maricopa County, and all of the witnesses that he intended to call at the evidentiary hearing resided in Yuma. Because the court ruled that an evidentiary hearing was not necessary and Curtis was not entitled to a trial de novo, no witnesses would be called to testify. Thus, the convenience of witnesses was not an issue and the superior court did not abuse its discretion by denying the change of venue.

¶ 10 Curtis next asserts that the superior court was required, under A.R.S. § 12–910 (2003), to hold an evidentiary hearing. Interpretation of a statute is a question of law that we independently determine. *Shaffer v. Ariz. State Liquor Bd.,* 197 Ariz. 405, 408, ¶ 8, 4 P.3d 460, 463 (App.2000).

¶ 11 Section 12–910 requires an evidentiary hearing *only* upon a showing that a hearing is necessary for the court's determination on review. When "the language of a statute is plain or unambiguous and the meaning does not lead to an impossibility or an absurdity, courts must observe the natural import of the language used and are not free to extend the meaning though the result may be harsh, unjust or mistaken policy." *Members of Bd. of Educ. of Pearce Union High Sch. Dist. v. Leslie,* 112 Ariz. 463, 465, 543 P.2d 775, 777 (1975). Section 12–910(A) provides:

> An action to review a final administrative decision shall be heard and determined with convenient speed. If requested by a party to an action within thirty days after filing a complaint, the court shall hold an evidentiary hearing, including testimony and argument, *to the extent necessary to make the determination* required by subsection E of this section. The court may hear testimony from witnesses who testified at the administrative hearing and witnesses who were not called to testify at the administrative hearing.

A.R.S. § 12–910 (emphasis added). Paragraph E of the statute requires the court to affirm unless "the court concludes that the [agency] action is not supported by substantial evidence, is contrary to law, is arbitrary and capricious or is an abuse of discretion." By its plain meaning, the statute requires an evidentiary hearing only upon a showing that a hearing is necessary to resolve those questions.

¶ 12 Curtis failed to show that a hearing was necessary. Curtis' request for an evidentiary hearing stated that he would "submit relevant and admissible exhibits and testimony that were not offered during the administrative hearing (because of the wrongful denial of the request of the change of venue) as well as exhibits and testimony presented at the hearing." His affidavit in support of the change of venue states that he intended to call nineteen witnesses at an evidentiary hearing, seven of whom testified at the administrative hearing. However, Curtis failed to provide specifics regarding the substance of the proposed testimony. Because he did not show that a hearing was necessary, the court did not err in denying his request for an evidentiary hearing.

¶ 13 Curtis also challenges the ALJ's denial of his request to move the administrative

hearing to Yuma County.[1] At the administrative hearing, Curtis asserted that he would be prejudiced by a lack of live testimony and that he could not subpoena witnesses to appear in Maricopa County.[2] Curtis did not identify how many witnesses could not appear or what testimony they would offer. The ALJ's denial of the motion for a change of venue stated that Curtis could move to have witnesses testify telephonically.

¶ 14 No statute or rule prescribes the location of administrative hearings.[3] Section 41–1092.01 establishes an office of administrative hearings and provides that all non-exempt state agencies "shall use the services and personnel of the office to conduct administrative hearings." A.R.S. § 41–1092.01(E) (2004). When a party seeks a hearing, the agency "shall notify the office of the appeal . . . and the office shall schedule . . . a hearing pursuant to 41–1092.05." A.R.S. § 41–1092.03(B) (2004). The agency "shall prepare and serve a notice of hearing on all parties to the appeal," and the notice shall include "[a] statement of the time, *place* and nature of the hearing." A.R.S. § 41–1092.05(D)(1) (2004) (emphasis added). Prehearing conferences may be held to "[s]chedule deadlines, hearing dates and *locations* if not previously set." A.R.S. § 41–1092.05(F)(5) (emphasis added). Although the latter two statutes mention location, neither *specifies* a location.

■ ¶ 15 Curtis contends that the ALJ abused his discretion in selecting Phoenix as the location for the hearing. To support his argument, Curtis cites *Burri v. Campbell*, 102 Ariz. 541, 434 P.2d 627 (1967). In *Burri*, our supreme court held that the Legislature

had delegated discretion to the Superintendent of Motor Vehicles to set times and places for hearings on license suspensions. *Id.* at 543, 434 P.2d at 629. Although acknowledging that requiring a hearing in Phoenix for a Tucson resident could deny procedural due process in a given case, our supreme court held that holding the hearing in Phoenix was not an abuse of discretion: The hearing could be conducted with affidavits and oral argument, mitigating the inconvenience posed by the Phoenix location, and appellant failed to show that Phoenix was an unreasonable location. *Id.* Likewise, Curtis has not shown that holding the hearing in Phoenix was unreasonable because Curtis could have moved to allow his witnesses to testify telephonically, seven witnesses appeared at the hearing, and Curtis provided letters and affidavits from ten others.

■ ¶ 16 Curtis nonetheless asserts that conducting the hearing in Phoenix denied him procedural due process. Due process entitles a party to notice and an opportunity to be heard at a meaningful time and in a meaningful manner. *Comeau v. Ariz. State Bd. of Dental Exam'rs*, 196 Ariz. 102, 106–07, ¶ 20, 993 P.2d 1066, 1070–71 (App.1999). Due process also entitles a party to offer evidence and confront adverse witnesses. *Application of Levine*, 97 Ariz. 88, 91–92, 397 P.2d 205, 207 (1964).

■ ¶ 17 Curtis was not denied due process. He had notice of the Department's reasons for denying his application, appealed that decision, and presented evidence to an independent decision-maker. *See Johnson v.*

---

**1.** Our review is of the superior court's decision, not the administrative decision. However, in doing so we decide whether the administrative decision is supported by substantial evidence or is arbitrary, capricious, an abuse of discretion, or contrary to law. *See* A.R.S. § 12–910(E); *Sigmen v. Ariz. Dep't of Real Estate*, 169 Ariz. 383, 386, 819 P.2d 969, 972 (App.1991); *City of Sierra Vista v. Dir., Ariz. Dep't of Envtl. Quality*, 195 Ariz. 377, 380, ¶ 7, 988 P.2d 162, 165 (App.1999).

**2.** Curtis fails to explain or cite authority to support his proposition that he could not subpoena witnesses to appear in Maricopa County. Pursuant to A.R.S. § 41–1092.07(C) (Supp.2005), the ALJ "may issue subpoenas to compel the attend-

ance of witnesses" at the hearing. Moreover, Arizona Rule of Civil Procedure 45 does not preclude the issuance of a subpoena in this circumstance. However, under Rule 45, the party under subpoena could have sought to quash or modify the subpoena because the hearing was more than forty miles from the party's residence. Ariz. R. Civ. P. 45(c)(3)(A)(ii).

**3.** The Department contends that pursuant to A.R.S. § 32–2157(A) (Supp.2005) hearings are to be held at the office of administrative hearings. However, A.R.S. § 32–2157(A) governs license renewal proceedings, and although Curtis had had a license, he let it lapse. Therefore, his request was a new application.

*Mofford*, 181 Ariz. 301, 304, 890 P.2d 76, 79 (App.1995) (employee given notice of charges, opportunity to be heard, and post-termination hearing received due process). Moreover, Curtis has not shown that affidavits and telephonic testimony were inadequate methods of presenting evidence.[4]

¶ 18 Curtis next contends that the ALJ denied him equal protection because a party who appeals an administrative action and lives in Phoenix or Tucson is treated differently than one who lives in Yuma. To establish an equal protection violation, a party must establish (1) that it was treated differently than those who are similarly situated, and (2) when disparate treatment does not implicate fundamental rights or suspect classification, that the classification bears no rational relation to a legitimate state interest. *Aegis of Ariz., L.L.C. v. Town of Marana*, 206 Ariz. 557, 570–71, ¶ 54, 81 P.3d 1016, 1029–30 (App.2003); *Lindsay v. Cave Creek Outfitters, L.L.C.*, 207 Ariz. 487, 494, ¶ 25, 88 P.3d 557, 564 (App.2003).

¶ 19 Curtis fails to establish an equal protection violation. First, Curtis fails to show that he was treated differently than others in the same situation. He does not explain how he was denied a privilege available to all others who request a hearing to contest denial of a license, and he cites no authority bestowing on him a right to choose the location of a hearing. Second, Curtis fails to show that the classification bears no rational relation to a legitimate state interest. On the contrary, a rational basis exists: The agency has a legitimate interest in holding the hearing near its location and the location of the ALJ.

¶ 20 Curtis next challenges the ALJ's conclusion that the Department properly denied him a license. In reviewing the superior court's affirmance of an administrative decision, our review is limited to deciding whether the administrative decision is supported by substantial evidence or is arbitrary, capricious, an abuse of discretion, or contrary to law. *See* A.R.S. § 12–910(E); *Sigmen*, 169

Ariz. at 386, 819 P.2d at 972; *City of Sierra Vista*, 195 Ariz. at 380, ¶ 7, 988 P.2d at 165.

¶ 21 The ALJ's recommended decision and the Commissioner's adoption of it are supported by substantial evidence. The evidence presented showed that Curtis had been convicted of the following crimes: misdemeanor driving while under the influence in 1987; possession and attempted transfer of a narcotic drug, both felonies, in 1992; disturbing the peace and reckless or negligent operation of a boat, both misdemeanors, in 1996; and disorderly conduct, a misdemeanor, in 1997. The Department introduced related police reports, and Curtis testified that despite his resolve to abstain from alcohol after the 1997 incident, he consumed alcohol in June 2000, became ill, and was terminated from his employment. The foregoing constitutes sufficient evidence to support the ALJ's decision.

¶ 22 Curtis nonetheless asserts that the Department failed to refute "the overwhelming evidence" of his good character. In reviewing administrative decisions, "[n]either we nor the superior court weigh the evidence to see if we would find some evidence more or less persuasive or give it more or less significance" than the ALJ. *Shaffer*, 197 Ariz. at 409, ¶ 20, 4 P.3d at 464. The ALJ was skeptical of Curtis' honesty, his ability to accept full responsibility for his actions, and the relatively short period of sobriety compared to the longevity of Curtis' alcohol and substance abuse problems. The ALJ questioned Curtis' "judgment, commitment and ability to control what has been a volatile, aggressive, and probably an addictive personality." The ALJ properly evaluated the evidence.

¶ 23 Curtis also argues that the ALJ relied on a felony conviction without finding the felony was reasonably related to the functions of a real estate salesperson. Section 32–2153(B)(2) permits the commissioner to deny a license when the applicant has "[b]een convicted . . . of a felony *or* of any crime of forgery, theft, extortion, conspiracy

---

4. Curtis alleges that the ALJ discounted the written submissions for lack of specificity. That overstates the ruling: The ALJ stated that *one*

letter failed to indicate a time frame for support group meetings.

to defraud, a crime of moral turpitude or any other like offense." A.R.S. § 32–2153(B)(2) (Supp.2005) (emphasis added). The ALJ concluded that a felony conviction for possession of illegal drugs established grounds under A.R.S. § 32–2153(B)(2) to deny a license.

¶ 24 Contrary to Curtis' assertion, the ALJ did find that the felony conviction was reasonably related to the functions of a real estate salesperson. The ALJ stated that "[t]he real estate industry places heavy reliance not only on an agent's competence, honesty, and financial integrity, but also [on] how the person represents the industry." The ALJ noted that ability to inspire trust and confidence, to be forthright with others and oneself, and to show understanding and concern for others were all relevant to employment in real estate. Furthermore, the ALJ considered the "potential that if a person has a substance abuse problem that [sic] it will once again impact negatively with adverse consequences to the public." He found that Curtis' denial of "his limitations with respect to alcohol" could be dangerous to him and the public. These findings reasonably support a conclusion that a drug offense and the possibility of a relapse could seriously impact Curtis' ability to function as a licensed salesperson.

¶ 25 Curtis next asserts that the ALJ erred in concluding that a drug conviction indicates lack of good character. However, the ALJ's finding of lack of good character considered far more than the drug conviction. The ALJ noted that Curtis "was not completely forthright" when testifying about his prior arrests and a 2000 drinking incident. The ALJ also noted that Curtis failed to submit a complete application and had not accepted responsibility for the missing detailed employment history. The ALJ concluded in light of "the history of criminal and personal problems, the impact of substance abuse, and questions regarding the Petitioner's forthrightness about the June, 2000, drinking episode, [and] the missing job information, ... there is significant uncertainty about the Petitioner." In addition to "serious problems in the not so distant past" and their possible impact on the public, the ALJ questioned whether Curtis had "taken the

steps to ensure the success of that commitment, to change those aspects of his live [sic] which caused or contributed to his problems." The ALJ's determination was supported by the evidence.

¶ 26 Curtis next contends that although § 32–2153(B)(7) demands only current good character, the ALJ relied on his past to find lack of good character. The record demonstrates that the ALJ considered both past and present conduct. The ALJ recognized that he must consider Curtis' "current status" and acknowledged that it had been six years since the last conviction. The ALJ nonetheless found Curtis had not been completely truthful at the hearing and did not take responsibility for his incomplete application. These findings were not based on past behavior. Moreover, past conduct permits rational inferences about present character. The ALJ properly considered Curtis' history.

¶ 27 Curtis also argues that the reference to "good character" in § 32–2153(B)(7) adopts an impermissibly vague standard for denying a license. We presume statutes are constitutional, and one claiming that a statute is unconstitutional bears a heavy burden. *Martin v. Reinstein*, 195 Ariz. 293, 301–02, ¶ 16, 987 P.2d 779, 787–88 (App.1999). A statute need not be drafted with absolute precision or define all of its terms. *State v. Lefevre*, 193 Ariz. 385, 390, ¶ 18, 972 P.2d 1021, 1026 (App.1998). Even if a statute fails to define a term, it is not void for vagueness if it gives fair notice of behavior that should be avoided. *Id.* at 390, ¶ 19, 972 P.2d at 1026 (App.1998). We resolve any doubts in favor of upholding a statute. *Aros v. Beneficial Ariz., Inc.*, 194 Ariz. 62, 67, 977 P.2d 784, 789 (1999).

¶ 28 The reference to "good character" in § 32–2153(B)(7) is not impermissibly vague. An ordinary person would understand that misconduct, such as that involved here, shows a lack of good character. Section 32–2153 lists twenty-five specific acts that permit suspension, revocation, or denial of license. A.R.S. § 32–2153(A). Thus, the statute is not without any standards. Furthermore, one denied a license may receive a

hearing and pursue further judicial review to protect against arbitrary application of the law. *See* A.R.S. § 32–2158(A) (2002) (right to witnesses); A.R.S. § 32–2159(A) (2002) (commissioner's decision may be appealed to superior court).

¶ 29 Arizona courts have rejected vagueness arguments attacking criteria no more definite than the one at issue. In *Fountain v. Oelschlegel,* 9 Ariz.App. 236, 239, 451 P.2d 316, 319 (1969), this court held that a licensing statute for pharmacists permitting revocation for "gross immorality" was not impermissibly vague. The statute listed three other bases for revocation and authorized a hearing to determine whether the licensee in that case had sold drugs without a prescription. *Id.* at 237–38, 451 P.2d at 317–18. It was "sufficiently clear to apprise any pharmacist of the course of conduct he must follow if he wishes to keep his license." *Id.* at 239, 451 P.2d at 319.

¶ 30 Contrary to Curtis' argument, the standard was not vague as applied to him. The evidence demonstrated that Curtis had used "abusive language, [and had engaged in] belligerent behavior, [that revealed] disrespect for the rights of others, and disrespect for lawful authority." He also had inflicted violence on family members that required police intervention. The ALJ also decided that Curtis "was not completely forthright." Accordingly, the standard, as applied to Curtis, was not impermissibly vague. *See Harris v. Hunt,* 122 S.W.3d 683, 689 (Mo.Ct.App. 2003) (terms "good moral character" and "good reputation for honesty, integrity, and fair dealing" were not impermissibly vague as applied to real estate licensee in license suspension proceedings).

¶ 31 Accordingly, we affirm the superior court's judgment.

CONCURRING: LAWRENCE F. WINTHROP, Presiding Judge and JON W. THOMPSON, Judge.

