300 P.3d 552

**Shakeel Aziz KAHN, M.D.,**
**Plaintiff/Appellant,**

v.

**ARIZONA MEDICAL BOARD,**
**Defendant/Appellee.**

**No. 1 CA–CV 12–0267.**

Court of Appeals of Arizona, Division 1, Department E.

March 26, 2013.

---

Thomas C. Horne, Attorney General By Anne Froedge, Assistant Attorney General, Phoenix, Attorneys for Defendant/Appellee.

Buckley King, LPA By Calvin L. Raup, Phoenix, Co–Counsel for Plaintiff/Appellant.

Law Offices of Michael R. Golder, PLLC By Michael R. Golder, Phoenix, Co–Counsel for Plaintiff/Appellant.

## OPINION

DOWNIE, Judge.

¶ 1 Shakeel Aziz Kahn, M.D., appeals the superior court's judgment upholding a letter of reprimand issued to him by the Arizona Medical Board ("Board"). We reject Kahn's contention that a vacant Board position precluded the Board from taking disciplinary action against him. We further hold that Arizona Revised Statutes ("A.R.S.") section 12–2604(A), which dictates qualifications for expert witnesses in medical malpractice actions, is inapplicable to Board disciplinary proceedings.

## FACTS AND PROCEDURAL HISTORY

¶ 2 Kahn is a member of the medical staff at Valley View Medical Center in Fort Mohave, Arizona. By letter dated August 11, 2009, the hospital's Chief of Staff advised the Board that Kahn had been summarily suspended from the medical staff on June 26, 2009, "for failure to see his hospital patients on a daily basis, in violation of hospital policy," but was reinstated three days later. The letter stated that Kahn's actions "may have constituted unprofessional conduct pursuant to ARS 32–1401(25)(q)."

1. The complaint specifically alleged that Kahn failed to: (1) see L.M. on a daily basis; (2) explore L.M.'s "increased oxygen requirements"; (3) follow up on chest x-rays showing bilateral infiltrates; (4) "personally assess a hospitalized patient who was hypoxic while on supplemental oxygen"; and (4) immediately evaluate "a patient with acute respiratory failure." The complaint asserted that "[a]s a result of these devia-

¶ 3 The Board opened an investigation and advised Kahn it would be reviewing medical charts of three of his patients. The Board's medical consultant, Kathleen Coffer, M.D., submitted a report opining that Kahn had complied with the standard of care as to two of the patients but had fallen below the standard of care in treating L.M., causing her harm. Kahn disputed Coffer's conclusions regarding L.M.

¶ 4 The Board filed a formal complaint against Kahn, alleging that he deviated from the standard of care in treating L.M., which constituted unprofessional conduct pursuant to A.R.S. § 32–1401(27)(q) ("Unprofessional conduct" includes "[a]ny conduct or practice that is or might be harmful or dangerous to the health of the patient or the public").[1] An evidentiary hearing was held before an Administrative Law Judge ("ALJ") at which Kahn, Coffer, L.M., and a Board investigator testified.

¶ 5 The ALJ issued proposed findings of fact, conclusions of law, and a recommended order. He concluded Kahn had deviated from the standard of care in treating L.M. and recommended that the Board issue a letter of reprimand.

¶ 6 At its August 11, 2010 meeting, the Board adopted the ALJ's recommended decision, concluding Kahn engaged in unprofessional conduct and voting unanimously to issue a letter of reprimand.[2] Kahn filed a complaint for judicial review in the superior court. See A.R.S. §§ 12–904(A), 32–1453. After briefing and oral argument, the superior court affirmed the Board's decision. Kahn filed a timely notice of appeal. We have jurisdiction pursuant to A.R.S. § 12–2101(A)(1).

## DISCUSSION

### I. The Board's Composition

 ¶ 7 Kahn contends the Board was improperly constituted when it voted to repri-

tions from the standard of care, LM developed severe pneumonia with acute respiratory failure while hospitalized and required ICU transfer."

2. The Board made one change to the ALJ's recommendation that is not material to the issues raised on appeal.

mand him, rendering its action void. We consider this legal issue *de novo*.

¶ 8 Section 32–1402(A) sets the Board's membership at "twelve members, four of whom shall represent the public and eight of whom shall be actively practicing medicine. One of the four public members shall be a licensed practical nurse or a professional nurse ... with at least five years' experience." The "presence of seven board members at a meeting constitutes a quorum. A majority vote of the quorum is necessary for the board to take any action." A.R.S. § 32–1404(B).

¶ 9 The nurse-member position was vacant when the Board voted to reprimand Kahn. The statutes, though, do not require the presence of any specific member for the Board to conduct business. Eleven Board members attended the August 11, 2010 meeting, and they voted unanimously to reprimand Kahn.

¶ 10 We have previously held that an administrative board could transact business, despite the absence of its statutorily mandated lay member, as long as a quorum was present. *See Schmitz v. Ariz. State Bd. of Dental Exam'rs*, 141 Ariz. 37, 42–43, 684 P.2d 918, 923–24 (App.1984) (board of dental examiners' investigative committee could act without participation of lay member because Arizona law permits a board to conduct business if a majority of members is present); *see also Garlington v. Smith*, 63 Ariz. 460, 465, 163 P.2d 685, 688 (1945) (upholding board of medical examiners' action, despite absence of one board member at meeting where license was revoked; "Under the law there are five members of this board. A majority could legally revoke the license of the plaintiff.").

¶ 11 Notwithstanding this Arizona precedent, Kahn relies on *Vuagniaux v. Dep't of Prof'l Regulation*, 208 Ill.2d 173, 280 Ill.Dec. 635, 802 N.E.2d 1156 (2003), which involved disciplinary proceedings against a chiropractor. *Id.* at 1163. An administrative law judge granted the chiropractor's motion to preclude the medical board's only chiropractic member—Cook—from participating in his case, whereupon the board named Pope, a different chiropractor, to serve in Cook's place. *Id.* at 1162. The Illinois Supreme Court ruled the board was not properly constituted because it included Pope, whom the board had no authority to appoint; instead, Illinois law dictated that the governor, with advice and consent of the senate, was to appoint all members of the board. *Id.* at 1164.

¶ 12 The case at bar does not involve a participant in Board proceedings whose service was unauthorized by law. *Vuagniaux* does not stand for the proposition that a membership vacancy deprives an administrative board of jurisdiction to pursue statutorily mandated regulatory functions.

¶ 13 Kahn's reliance on *New Process Steel, L.P. v. National Labor Relations Board*, 560 U.S. 674, 130 S.Ct. 2635, 177 L.Ed.2d 162 (2010), is also unavailing. In that case, the National Labor Relations Board ("NLRB") had four members and one vacancy, but anticipated two additional vacancies in the near future. *Id.* at 2638. The National Labor Relations Act ("NLRA") required three NLRB members for a quorum, but permitted two members of any delegee group to constitute a quorum of the group. *Id.* The four existing members "decided to take action in an effort to preserve the Board's authority to function." *Id.* They named three of the sitting members "a three-member group," delegating "all of the Board's powers" to that group. *Id.* After the term of one of those members expired, the two remaining members acted as a quorum of the delegee group, deciding almost 600 cases on behalf of the NLRB. *Id.* at 2639.

¶ 14 The United States Supreme Court held that the NLRA required a delegee group to maintain a membership of three persons in order to exercise authority delegated by the NLRB. "Interpreting the statute to require the [NLRB's] powers to be vested at all times in a group of at least three members is consonant with the [NLRB] quorum requirement, which requires three participating members 'at all times' for the [NLRB] to act." *Id.* at 2640 (noting that "vacancies do not impair the ability of the Board to take action, so long as the quorum is satisfied").

¶ 15 Unlike *New Process Steel,* a statutory quorum of duly-appointed Board members participated in Kahn's proceeding, and their unanimous action exceeded the "majority vote" requirement of A.R.S. § 32–1404(B). Nothing in Arizona's statutes suggests the Board loses authority to act when a Board vacancy exists. Indeed, such a conclusion would imperil the Board's "primary duty," which "is to protect the public from the unlawful, incompetent, unqualified, impaired or unprofessional practitioners of allopathic medicine through licensure, regulation and rehabilitation of the profession in this state." A.R.S. § 32–1403(A).

¶ 16 Courts "are 'not at liberty to rewrite the statute under the guise of judicial interpretation.'" *New Sun Bus. Park, LLC v. Yuma County,* 221 Ariz. 43, 47, ¶ 16, 209 P.3d 179, 183 (App.2009) (quoting *State v. Patchin,* 125 Ariz. 501, 502, 610 P.2d 1062, 1063 (App.1980)). Because a quorum of duly-appointed Board members was present and voted unanimously to discipline Kahn, the Board acted within its statutory authority. *Cf. Serian v. W. Va. Bd. of Optometry,* 171 W.Va. 114, 297 S.E.2d 889, 893 (1982) (although governor had not appointed lay persons as required by statute, optometry board nonetheless could conduct license revocation proceedings if a quorum was present).

## II. Standard of Care Testimony

¶ 17 According to Kahn, Coffer could not offer standard of care testimony against him because she did not satisfy the expert witness qualifications set forth in A.R.S. § 12–2604. Specifically, Kahn argues, Coffer was unqualified to testify because she practices internal medicine, whereas he is a family practitioner.

¶ 18 Statutory interpretation raises questions of law that we review *de novo. E. Vanguard Forex, Ltd. v. Ariz. Corp. Comm'n,* 206 Ariz. 399, 406, ¶ 19, 79 P.3d 86,

93 (App.2003). Section 12–2604(A) states that "[i]n an action alleging medical malpractice, a person shall not give expert testimony on the appropriate standard of practice or care unless the person is licensed as a health professional in this state or another state" and meets other specified criteria. As relevant, the statute provides that if the party against whom the testimony is offered is or claims to be a specialist, the expert must have specialized at the time of the underlying occurrence in the same specialty or claimed specialty. A.R.S. § 12–2604(A)(1).

¶ 19 Our goal in interpreting a statute is to determine and give effect to legislative intent. *See Zamora v. Reinstein,* 185 Ariz. 272, 275, 915 P.2d 1227, 1230 (1996). We first examine the statute's plain language and, if it is clear, rely on it rather than employing tools of statutory construction. *Hayes v. Cont'l Ins. Co.,* 178 Ariz. 264, 268, 872 P.2d 668, 672 (1994).

¶ 20 By its express terms, A.R.S. § 12–2604(A) applies to "action[s] alleging medical malpractice." The legislature has defined a "medical malpractice action" as one "for injury or death against a licensed health care provider" based on alleged "negligence, misconduct, errors or omissions." A.R.S. § 12–561(2). The Board's proceeding was not a civil action against Kahn "for injury or death." It was a disciplinary proceeding against his medical license for unprofessional conduct under A.R.S. § 32–1401(27)(q).[3]

¶ 21 The legislative impetus for adopting § 12–2604(A) is inapplicable to Board disciplinary proceedings. "[T]he legislature intended that § 12–2604(A) 'ensure that physicians testifying as experts have sufficient expertise to truly assist the fact-finder on issues of standard of care and proximate causation.'" *Lo v. Lee,* 231 Ariz. 531, 533, ¶ 9, 298 P.3d 220, 222 (App.2012) (quoting *Awsienko v. Cohen,* 227 Ariz. 256, 259, ¶ 13, 257 P.3d 175, 178 (App.2011)). But unlike the trier of fact in medical malpractice ac-

---

3. This Court recently held that A.R.S. § 12–2604 applies to medical negligence claims brought under the Adult Protective Services Act ("APSA"), A.R.S. §§ 46–451 through 46–459, as well as actions filed pursuant to the Medical Malpractice Act, A.R.S. §§ 12–561 through 12–594. *Cornerstone Hosp. of Se. Ariz., L.L.C. v. Marner ex rel.*

*County of Pima,* 231 Ariz. 67, 290 P.3d 460 (App.2012); *see also Estate of McGill v. Albrecht,* 203 Ariz. 525, 531, ¶ 22, 57 P.3d 384, 390 (2002) (medical negligence may be the basis for an APSA action). A Board proceeding, though, is not a civil action for medical negligence, so the holding in *Cornerstone* does not assist Kahn.

tions, a professional regulatory board may rely on its own expertise to establish the standard of care. *See Golob v. Ariz. Med. Bd.,* 217 Ariz. 505, 512, ¶ 26, 176 P.3d 703, 710 (App.2008); *Webb v. State ex rel. Ariz. Bd. of Med. Exam'rs,* 202 Ariz. 555, 560, ¶ 20, 48 P.3d 505, 510 (App.2002); *Lathrop v. Ariz. Bd. of Chiropractic Exam'rs,* 182 Ariz. 172, 181, 894 P.2d 715, 724 (App.1995); *Croft v. Ariz. State Bd. of Dental Exam'rs,* 157 Ariz. 203, 209–10, 755 P.2d 1191, 1197–98 (App. 1988). "[A]s distinct from a malpractice case tried to a jury or a court, the decisions in an administrative disciplinary proceeding against a professional licensee are made by a board comprised of individuals who presumably have knowledge of the applicable standard of care." *Gaveck v. Ariz. State Bd. of Podiatry Exam'rs,* 222 Ariz. 433, 437, ¶ 15, 215 P.3d 1114, 1118 (App.2009); *see also* A.R.S. § 41–1062(A)(3) (allowing an agency's experience, technical competence and specialized knowledge to be used in evaluating evidence); *Baker v. Univ. Physicians Healthcare,* 231 Ariz. 379, ¶ 9, 296 P.3d 42, 46 (2013) ("The general intent of § 2604 is clear: in a medical malpractice action, only physicians with comparable training and experience may provide expert testimony regarding whether the treating physician provided appropriate care.").

¶ 22 Nothing in A.R.S. § 32–1401, *et seq.,* suggests that Board disciplinary proceedings are subject to § 12–2604. On the contrary, the legislature has decreed that "[a]ll relevant evidence is admissible" in administrative hearings. A.R.S. § 41–1092.07(D); *see also* A.R.S. § 41–1092.07(F) (unless otherwise provided by law, administrative hearings "may be conducted in an informal manner and without adherence to the rules of evidence required in judicial proceedings"). Kahn does not contend Coffer's testimony was irrelevant.

¶ 23 The legislature clearly knows how to mandate expert witness qualifications for proceedings when it desires to do so. It has not done so in the context of Board disciplinary matters. Because Coffer was not subject to A.R.S. § 12–2604, the Board did not err by considering her testimony.

## CONCLUSION

¶ 24 We affirm the judgment of the superior court. We deny Kahn's request for attorneys' fees under A.R.S. § 12–348(A)(2) because he is not the prevailing party.

CONCURRING: MAURICE PORTLEY and PHILIP HALL, Judges.