NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

CALVIN ELEBY, JR., *Appellant*,

*v.*

ARIZONA STATE BOARD OF EDUCATION, *Appellee*.

No. 1 CA-CV 24-0632

FILED 04-17-2025

Appeal from the Superior Court in Maricopa County
No. LC2023-000304-001
The Honorable Joseph P. Mikitish, Judge

**AFFIRMED**

COUNSEL

Calvin Eleby, Jr., Tucson
*Appellant*

Arizona Attorney General's Office, Phoenix
By Joseph Cada
*Counsel for Appellee*

---

**MEMORANDUM DECISION**

Judge James B. Morse Jr. delivered the decision of the Court, in which Presiding Judge Jennifer M. Perkins and Judge D. Steven Williams joined.

---

**M O R S E**, Judge:

¶1 Calvin Eleby, Jr. appeals the superior court's order affirming the Arizona State Board of Education's ("Board") decision to suspend his teaching certificates and bar him from applying for an Interim Principal License for three years. For the following reasons, we affirm.

**FACTS AND PROCEDURAL BACKGROUND**

¶2 During the 2021-2022 school year, Eleby worked as an assistant principal in the Baboquivari Unified School District ("BUSD"). In late 2021, Eleby purchased air fresheners emblazoned with his school's logo and sold them in a school fundraiser. He paid an initial deposit with his personal funds but failed to obtain permission for the fundraiser, file the required paperwork, or remit sale proceeds to the school district. The air-freshener vendor billed the school district for additional unpaid invoices. In March 2022, Eleby organized a paid-entry raffle offering valuable prizes without authorization. And Eleby used his school-district credit card at unauthorized stores.

¶3 In April 2022, the Board filed a complaint against Eleby alleging that he: (1) failed to handle fundraising proceeds in accordance with school-district policies; (2) failed to adhere to Uniform System of Financial Records ("USFR") guidelines; and (3) engaged in conduct that discredited the teaching profession.

¶4 In December 2022, Eleby received notice that his disciplinary hearing before the Professional Practices Advisory Committee ("PPAC")—a Board Committee tasked with conducting hearings for educators facing allegations of immoral and/or unprofessional conduct—would take place in February 2023. The notice specified that hearings were scheduled for two days each month, and the exact date would depend on the number and length of cases. Eleby asked the PPAC to move his hearing to March to allow his counsel to prepare his defense. The PPAC accommodated Eleby's

request and rescheduled his hearing for March 14 or 15. On the morning of March 14, the PPAC informed Eleby his hearing would take place the following day.

¶5        At the hearing, PPAC heard testimony from Dr. Bonn, the BUSD Superintendent, detailing Eleby's training on financial oversight, the prior warnings he had received regarding fundraising policies, and his past violations of these policies. Eleby presented three witnesses who testified regarding his character and professionalism, and Eleby's direct supervisor wrote a statement on his behalf. Eleby testified about the alleged misconduct, admitting to the acts alleged in the complaint but disputing the wrongfulness of his actions. The PPAC also heard evidence of Eleby's conviction of felony theft and disbarment from the practice of law.

¶6        The PPAC recommended that the Board bar Eleby from applying for an Interim Principal Certificate and suspend his active teaching certificates for three years. The Board adopted the PPAC's recommendation. Eleby requested a rehearing, which the Board denied. Eleby then appealed to the superior court seeking a new trial. The superior court denied his request and issued a final ruling affirming the Board's decision, finding that substantial evidence—including financial records, written policies, and testimony from school officials—supported the Board's findings.

¶7        Eleby timely appealed. We have jurisdiction pursuant to A.R.S. § 12-913. *See Svendsen v. Ariz. Dep't of Transp., Motor Vehicle Div.*, 234 Ariz. 528, 533, ¶ 13 (App. 2014) (interpreting A.R.S. § 12-913 as permitting an appeal to this Court).

**DISCUSSION**

¶8        We review administrative decisions involving regulated parties for questions of law and fact de novo, without deference to the agency's findings. *Simms v. Simms*, ___ Ariz. ___, ___, ___, ¶¶ 33–34, 62, 1 CA-CV 23-0139, 2025 WL 838114, at *6, *11 (Ariz. App. Mar. 18, 2025); A.R.S. § 12-910(F). When a committee like the PPAC hears testimony and makes a recommendation adopted by the Board, we defer to the committee's supported credibility findings and independently evaluate other factual and legal issues. *Simms*, ___ Ariz., at ___, ___, ¶¶ 34, 54–55.

**I.        Notice of Hearing.**

¶9        Eleby argues the superior court erred in affirming the Board's decision because the scheduling of his PPAC hearing violated due process.

Eleby complains that he did not receive sufficient notice of the hearing because he was told it would take place on either March 14 or 15. However, due process only requires "notice and an opportunity to be heard at a meaningful time and in a meaningful manner." *Curtis v. Richardson*, 212 Ariz. 308, 312, ¶ 16 (App. 2006); *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). "In a contested case, the parties shall be afforded an opportunity for hearing after reasonable notice[,]" which "shall be given at least 20 days prior to the date set for the hearing." Ariz. Admin. Code ("A.A.C.") R7-2-703(A); *see also* A.R.S. § 41-1067, -1092.02(A)(13)(a) (exempting the Board from Uniform Administrative Hearing Procedures).

**¶10**		The record shows that Eleby's hearing was initially scheduled in December 2022 for a February 2023 hearing and rescheduled for March 2023 at Eleby's request. Additionally, Eleby listed both March dates in his pre-hearing disclosures filed on March 7.

**¶11**		Eleby attended the hearing and presented evidence in his defense. He testified, called three witnesses, and submitted a letter from his supervisor into evidence. Eleby rested his case, stating he had no additional witnesses. Only in September 2023—nearly six months after the PPAC hearing—did Eleby assert that he had additional witnesses who could have testified on the March 14, but were unavailable on March 15.

**¶12**		Eleby has not shown that holding his hearing on March 15, rather than March 14, deprived him of a meaningful opportunity to present his case. And he should have raised any such argument at the PPAC hearing by either requesting a continuance or additional time to present any necessary witnesses. Because Eleby received adequate notice of the hearing and had an opportunity to be heard, we reject his due-process argument. *Curtis*, 212 Ariz. at 312, ¶ 16.

## II.	Admissibility of Character Evidence.

**¶13**		Eleby argues that the Board improperly allowed evidence of his prior felony conviction and disbarment at the hearing. He contends that his disbarment and convictions should not have been admissible because they occurred more than 10 years before the PPAC hearing.

**¶14**		The Arizona Rules of Evidence do not apply in PPAC hearings and "[i]rrelevant, immaterial or unduly repetitious evidence shall be excluded." A.A.C. R7-2-705(C). Eleby argues that his prior convictions and disbarment were irrelevant and, thus, inadmissible under the Arizona Administrative Code. He then cites to Arizona Rule of Evidence 609, which provides that convictions older than 10 years are admissible to impeach a

testifying witness only if the proponent provides notice and the probative value of the conviction outweighs the prejudicial effect. Eleby argues that the age of his prior convictions demonstrates that they had little probative value.

**¶15** Even if we apply the evidentiary rules, they allow for admission of prior bad acts to prove intent, and the absence of mistake or accident. Ariz. R. Evid. 404(b)(2). Here, Eleby was disbarred for professional misconduct involving the misappropriation of client funds for personal use. And he spent a year in prison after pleading guilty to two felony counts of theft for that misappropriation. Eleby's prior bad acts were relevant to his intent and the purposefulness (or lack thereof) of his actions. Accordingly, the Board did not abuse its discretion in admitting such evidence during the PPAC hearing.

### III. Sufficiency of the Evidence.

**¶16** Eleby argues that substantial evidence did not support the Board's decision.

**¶17** We defer only to the committee's supported credibility findings and independently evaluate all other factual and legal issues. *Simms*, ___ Ariz., at ___, ___, ¶¶ 34, 54–55. The standard of proof in administrative hearings is a preponderance of the evidence. A.A.C. R2-19-119(A).

**¶18** Eleby was accused of violating regulations regarding accounting and tracking of funds collected from students, parents, and school personnel, *see* A.A.C. R7-2-1308(A)(2) and (A)(3), and engaging in conduct that discredited the teaching profession, *see* A.A.C. R7-2-1308(B)(15). "Individuals found to have engaged in unprofessional or immoral conduct shall be subject to, and may be disciplined by, the Board." *Id.* at (C).

**¶19** Eleby operated two unauthorized fundraisers, failed to adhere to BUSD and USFR policies, and used a BUSD credit card at unauthorized stores. Eleby admitted to the alleged actions but attempted to justify or explain his conduct. The PPAC credited Dr. Bonn's testimony, which was supported by evidence of Eleby's conduct, including Eleby's admissions. We have independently reviewed the record and agree with the Board that a preponderance of the evidence showed Eleby's conduct violated R7-2-1308(A)(2), (A)(3), (B)(15), and (C), warranting disciplinary action.

**CONCLUSION**

¶20        We affirm.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**:          JR