304 P.3d 539

**WESTERN STATES PETROLEUM, INC., Plaintiff/Appellant,**

v.

**ARIZONA DEPARTMENT OF ENVIRONMENTAL QUALITY; Henry R. Darwin, in his official capacity as Acting Director of the Arizona Department of Environmental Quality, Defendants/Appellees.**

No. 1 CA–CV 11–0775.

Court of Appeals of Arizona, Division 1, Department C.

May 7, 2013.

Holm Wright Hyde & Hays PLC By Christopher S. Welker, Dominic L. Verstegen, Phoenix, Attorneys for Plaintiff/Appellant.

Thomas C. Horne, Arizona Attorney General By Curtis Cox, Assistant Attorney General, Phoenix, Attorneys for Defendants/Appellees.

SWANN, Judge.

¶ 1 Western States Petroleum, Inc. ("Western States"), appeals the superior court's order affirming a decision by the Arizona Department of Environmental Quality ("ADEQ") to deny Western States' request for an increase in coverage from the State Assurance Fund ("SAF"). After examining the series of revisions to the relevant statutes, we hold that excess SAF coverage is unavailable absent exhaustion of private insurance or other private financial responsibility mechanisms. Because Western States had no such insurance in place, we affirm.

*FACTS AND PROCEDURAL HISTORY*

¶ 2 Western States has owned a gas station in Carefree, Arizona, since 1975. In 1994, the Aranki family was operating the station when a release from an underground storage tank (UST) at the site was discovered. Western States promptly notified ADEQ of the release.

¶ 3 ADEQ asked Western States to prepare and submit various reports and corrective action plans regarding the release to demonstrate its eligibility for SAF funds.[1]

---

1. The SAF was established to provide partial reimbursements to owners or operators of sites

In 1997 or 1998, Western States requested, and has since received from ADEQ, more than $400,000 in SAF funds. In July 2009, Western States requested up to $500,000 in additional SAF funding. In that request, Western States' president, Robert Kec, certified that private insurance had "been utilized to the maximum extent possible to cover the costs associated with the release that is the subject of this [request] form...."[2] ADEQ denied the request because Western States had failed to demonstrate that it actually made use of insurance to the maximum extent possible: the request did not indicate that any claims relating to corrective-action costs associated with the release were made on a pollution-liability insurance policy.

¶ 4 Western States appealed ADEQ's decision and requested a formal hearing. An Administrative Law Judge at the Office of Administrative Hearings conducted a two-day evidentiary hearing and issued his decision on July 26, 2010, dismissing Western States' appeal. The ALJ found that Western States could have filed an insurance claim at the time of the release, but did not do so.[3] Accordingly, the ALJ concluded that Western States failed to demonstrate that it utilized the applicable insurance to the maximum extent possible as required by A.R.S. § 49–1054(A) and therefore did not qualify for any additional SAF coverage. ADEQ adopted the ALJ's findings of fact and conclusions of law and affirmed the denial of Western States' request for additional SAF funding.

¶ 5 Western States filed a complaint in superior court for judicial review of the administrative decision pursuant to A.R.S. § 12–904. After hearing oral argument (but denying Western States' request for an evidentiary hearing) and considering the record from the administrative hearing, the court affirmed ADEQ's decision by signed judgment. This timely appeal followed. We have jurisdiction pursuant to A.R.S. § 12–2101(A)(1).[4]

## DISCUSSION

### I. STANDARD OF REVIEW

¶ 6 In reviewing an administrative agency's decision, the superior court examines whether the agency's action was arbitrary, capricious, or an abuse of discretion. *Webb v. Ariz. Bd. of Med. Exam'rs*, 202 Ariz. 555, 557, ¶ 7, 48 P.3d 505, 507 (App.2002). We engage in the same process as the superior court when we review its ruling affirming an administrative decision. *Id.* We are not bound by an agency's or the superior court's legal conclusions. *Sanders v. Novick*, 151 Ariz. 606, 608, 729 P.2d 960, 962 (App.1986).

¶ 7 Issues regarding witness credibility are for the ALJ to decide, not the superior court or this court. *Siler v. Ariz. Dep't of Real Estate*, 193 Ariz. 374, 382, ¶ 41, 972 P.2d 1010, 1018 (App.1998). We view the evidence in the light most favorable to upholding an administrative decision. *Special Fund Div. v. Indus. Comm'n of Ariz.*, 182 Ariz. 341, 346, 897 P.2d 643, 648 (App.1994).

for investigation and remediation costs incurred in connection with a leaking UST ("LUST").

2. In 2003, Western States represented in correspondence to ADEQ that it had "submitted a claim against its applicable environmental insurance coverage...." In fact, Western States was named as an additional insured on two older policies, but coverage had expired by the time of the leak. In June 1997, Western States also filed a claim with AIG Technical Services, Inc., under its two insurance policies in effect at that time. But those claims were denied because the leak predated the policies' coverage periods. Western States has since admitted on multiple occasions that it did not have insurance coverage effective during the relevant time.

3. The ALJ also determined that Western States was not eligible for the additional SAF coverage

because it was not an "owner or operator" as defined in the applicable federal regulations that set forth the financial-responsibility requirements necessary for the additional SAF coverage. This finding is not essential to the result on appeal, and we therefore do not address it.

4. After the parties completed briefing, a different panel of this court suspended the appeal on June 8, 2012, and revested jurisdiction in the superior court to consider Western States' motion to set aside the judgment under Arizona Rule of Civil Procedure 60(c). The superior court denied the motion. Western States filed an amended notice of appeal to include the superior court's ruling denying the Rule 60 motion, and this appeal was reinstated on August 2, 2012.

## II. SEPARATE INSURANCE COVERAGE IS A PREREQUISITE TO ADDITIONAL SAF COVERAGE.

¶ 8 A.R.S. § 49–1054(A) provides, in pertinent part:

Effective retroactively to from and after December 31, 2002 and notwithstanding section 49–1052, subsection F, paragraph 5, the maximum amount that is subject to coverage is five hundred thousand dollars. Owners and operators who file a claim against any applicable insurance coverage available to them *may preserve their eligibility for assurance account coverage for amounts above five hundred thousand dollars up to the maximum of one million dollars* as prescribed by this section. An owner or operator is eligible for additional coverage from the assurance account up to a maximum of one million dollars *if the owner or operator has utilized to the maximum extent possible any insurance or alternative financial assurance mechanisms required for coverage pursuant to section 49–1052, subsection F, paragraph 5.*

(Emphasis added). A.R.S. § 49–1052(F)(5) provides that an owner or operator is not eligible for coverage if, *inter alia,* it has failed to comply with federal financial-responsibility requirements.

¶ 9 In 1994, when the release was reported, the limit of SAF coverage was $200,000. Western States correctly points out that A.R.S. § 49–1054(A) did not then require an owner or operator to make a claim on insurance—or even to have insurance—as a prerequisite to coverage. Indeed, A.R.S. § 49–1052(F)(5) was not enacted until 1996. Western States reasons that because the release was reported before 1996, and section 1052(F)(5) did not then require it to have insurance, its lack of insurance does not disqualify it from additional coverage. We disagree.

¶ 10 In 1996, the legislature increased the SAF coverage limit from $200,000 to $1 million. It is this increase in coverage that Western States now seeks to receive. At the same time that it increased the coverage limit, the legislature introduced the insurance requirement contained in section 1052(F)(5).

At no time was the excess coverage limit under section 1054(A) available to owners and operators who failed to comply with the financial-responsibility requirements of section 1052(F)(5).

¶ 11 In 2004, the legislature retroactively reduced the coverage limit to $500,000. In an apparent effort to mitigate the effect of this reduction on those who might have relied on the higher limits, the legislature allowed owners and operators to "preserve" their eligibility for the $1 million limit if they "utilized to the maximum extent possible any insurance required for coverage pursuant to section 49–1052, subsection F, paragraph 5." Western States interprets this provision to mean that an owner or operator may receive enhanced coverage simply by demonstrating the absence of private insurance coverage at a time when no coverage was required. This argument ignores the history of sections 1052 and 1054.

¶ 12 As relevant here, the term "preserve" is a transitive verb that can mean "to keep alive, intact, in existence, or from decay" or "to retain in one's possession." Merriam–Webster Unabridged Dictionary, http://unabridged.merriam-webster.com/unabridged/preserve (last visited April 30, 2013). Although susceptible of various precise meanings, "preserve" does not mean, and is not synonymous with, "acquire"—one cannot preserve what one never had. We conclude that, with respect to the 1994 release, Western States never had the right to the expanded coverage that the legislature created in 1996. The legislature expressly conditioned the availability of the expanded coverage on the existence of insurance or other financial-responsibility assurances contemplated by federal law. And to receive the benefit of the additional coverage, the owner or operator was required to exhaust those private resources. Nothing in A.R.S. § 49–1054—as it exists now or as it existed in the past—ever created enhanced coverage for owners and operators who had not secured their own insurance or demonstrated private responsibility. Because an essential requirement for the expanded SAF coverage was always the *existence* of private financial responsibility, we cannot read the statutes to

provide that the *absence* of those private resources confers a right to that coverage.

## III. THE SUPERIOR COURT DID NOT ERR BY DENYING WESTERN STATES' REQUEST FOR AN EVIDENTIARY HEARING.

¶ 13 Western States sought to present evidence to the superior court in support of its contention that ADEQ had awarded increased SAF funding in connection with other sites whose owners lacked insurance. The court denied the request. Western States argues the court abused its discretion because an evidentiary hearing was required under A.R.S. § 12–910(A).[5] We review the interpretation of a statute de novo. *Curtis v. Richardson*, 212 Ariz. 308, 311, ¶ 10, 131 P.3d 480, 483 (App.2006).

¶ 14 Section 12–910 states, in pertinent part:

A. An action to review a final administrative decision shall be heard and determined with convenient speed. If requested by a party to an action within thirty days after filing a complaint, the court shall hold an evidentiary hearing, including testimony and argument, *to the extent necessary to* make the determination required by subsection E of this section.

. . .

E. The court may affirm, reverse, modify or vacate and remand the agency action. The court shall affirm the agency action unless after reviewing the administrative record and supplementing evidence presented at the evidentiary hearing the court concludes that the action is not supported by substantial evidence, is contrary to law, is arbitrary and capricious or is an abuse of discretion.

(Emphasis added). "By its plain meaning, the statute requires an evidentiary hearing only upon a showing that a hearing is necessary to [determine whether the agency action was not supported by substantial evidence, was contrary to law, was arbitrary and capri-

cious or was an abuse of discretion]." *Richardson*, 212 Ariz. at 311, ¶ 11, 131 P.3d at 483.

¶ 15 During oral argument on appeal, Western States cited a similar filing with ADEQ as an example of a case in which the entity attempting to collect SAF funds had insurance but did not diligently pursue the insurance, yet ADEQ did not withhold the SAF funds on that basis. According to Western States, ADEQ's inconsistent application of A.R.S. § 49–1054 represents arbitrary and capricious action that it should have been permitted to prove.

¶ 16 We disagree. The filing referenced at oral argument was submitted to ADEQ in 2001, under an earlier version of A.R.S. § 49–1054. Western States did not proffer any examples of inconsistent application of § 49–1054(A) since the current version was enacted. We conclude that a single example of a ten-year-old decision, even if erroneous, is insufficient as a matter of law to demonstrate arbitrary and capricious agency action. We therefore affirm the superior court's determination that an evidentiary hearing was not necessary under A.R.S. § 12–910.[6]

## IV. ATTORNEY'S FEES

¶ 17 Western States requests its attorney's fees and costs incurred in this case pursuant to A.R.S. § 12–348(A)(2). Because Western States is not the prevailing party, we deny its request.

## CONCLUSION

¶ 18 The superior court's order sustaining ADEQ's decision to deny Western States' application for additional SAF funding is affirmed.

CONCURRING: PHILIP HALL, Presiding Judge and SAMUEL A. THUMMA, Judge.

---

5. Western States' assertion that ADEQ "agreed to the admission of additional evidence for the trial court's consideration" is belied by the record. In its response, ADEQ requested that the court deny Western States' motion for additional evidence.

6. Western States' Rule 60(c) motion essentially restated the claims that we have addressed on the merits in this appeal. We conclude that the superior court did not err by denying the motion.