NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

In re the Marriage of:

REBECCA LEE JOHNSON,
*Petitioner/Appellee,*

*v.*

MASAKELA MALONE,
*Respondent/Appellant.*

No. 1 CA-CV 18-0309 FC
FILED 8-22-2019

Appeal from the Superior Court in Maricopa County
No. FC2016-051274
The Honorable Lisa Ann VandenBerg, Judge

**AFFIRMED**

COUNSEL

Rebecca Lee Johnson, Warrensville Heights, OH
*Petitioner/Appellee*

Rosov Law, PLLC, Phoenix
By Elijah W. Rosov
*Counsel for Respondent/Appellant*

-----

## MEMORANDUM DECISION

Judge Diane M. Johnsen delivered the decision of the Court, in which Presiding Judge Randall M. Howe and Judge Jennifer B. Campbell joined.

-----

**J O H N S E N**, Judge:

¶1 Masakela Malone ("Father") appeals various aspects of the dissolution decree ending his marriage to Rebecca Johnson ("Mother"). For the following reasons, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2 Mother, a long-time member of the Air Force, and Father, a truck driver, married in 2013 and lived together in Illinois and Ohio. They had a child ("Child") in February 2015. Mother and Child moved to Maricopa County a few months later; meanwhile, Father was living with his girlfriend in Kansas City, Missouri. In January 2016, Mother petitioned the superior court to dissolve the marriage, seeking, *inter alia*, sole legal decision-making authority, a parenting plan in which she is the primary residential parent, and child support. During the course of the proceedings, Mother asked the court for leave to relocate Child to Cleveland.

¶3 The court held a one-day trial in March 2018, at which Mother, Father and a counselor testified. Father was represented at trial; Mother was not. The dissolution decree awarded Mother sole legal decision-making and made her Child's primary residential parent, approved her request to relocate Child, and granted her child support and attorney's fees. Father timely appealed. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, and Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1) (2019) and -2101(A)(1) (2019).[1]

## DISCUSSION

### A. Due Process.

¶4 Father first argues the superior court violated his due-process rights by initially setting the dissolution hearing for a full day, then

-----

[1] Absent material revision after the relevant date, we cite the current version of a statute or rule.

reducing the time to a half day, only to grant more time on the day of the hearing. He complains that as a result, his presentation of evidence was disrupted. Although the superior court may impose reasonable time limits on proceedings, it must afford parties "an opportunity to be heard at a meaningful time and in a meaningful manner." *Volk v. Brame*, 235 Ariz. 462, 468, ¶ 20 (App. 2014) (quoting *Curtis v. Richardson*, 212 Ariz. 308, 312, ¶ 16 (App. 2006)); *see also* Ariz. R. Fam. Law. P. 22(a). Even when a court's management of a hearing violates a party's due-process rights, we will reverse only if the party shows resulting prejudice. *Volk*, 235 Ariz. at 470, ¶ 26.

**¶5** Father's argument fails. The hearing ultimately lasted a full day, which he acknowledges was the time originally allotted. Mother and Father each presented their cases, and the court allowed Father to call a counselor who is a parenting supervisor to testify on his behalf. Father does not identify any prejudice from the manner in which the hearing proceeded, *id.*, and the record shows the court gave him "an opportunity to be heard at a meaningful time and in a meaningful manner," *id.* at 468, ¶ 20 (quoting *Curtis*, 212 Ariz. at 312, ¶ 16).

## B.     Evidentiary Issues.

**¶6** In his pretrial statement, Father invoked the Arizona Rules of Evidence pursuant to Arizona Rule of Family Law Procedure 2. On appeal, he argues the superior court abused its discretion by failing to admit Exhibit 27 and part of Exhibit 9. We review evidentiary rulings for an abuse of discretion. *Davis v. Davis*, 246 Ariz. 63, 65, ¶ 6 (App. 2018). Even if the court abused its discretion, we will not reverse unless the party challenging the court's ruling shows prejudice. *Id.*

**¶7** Exhibit 27 was a collection of W-2 and 1099 tax documents Father offered to show his income and a job change in 2017. Mother objected, arguing Father had not filed an updated Affidavit of Financial Information ("AFI") and contending that the exhibit might not reflect his total income for 2017. Offered the opportunity to lay a proper foundation for the exhibit, Father testified that he had not yet filed his tax return for 2017, and his lawyer did not ask him whether the exhibit reflected all of his earnings during the year. The court excluded the exhibit, finding it unreliable.

**¶8** Father argues the court abused its discretion by refusing to admit Exhibit 27 because the exhibit constituted the "best evidence" of his 2017 income. Knowing child support would be at issue in the hearing,

Father failed to file an updated AFI (the most recent one in the court's file was dated February 2017, nearly a year before the hearing). An AFI is a sworn "comprehensive statement of [a party's] income and expenses," which the court may consider as evidence. *See* Ariz. R. Fam. L. P. 2(d), 76.1(g)(1)(B). Although Father argued at trial that the tax documents in Exhibit 27 would show his income had changed since the year before, as stated, after invoking the Rules of Evidence, he failed to lay a proper foundation for the exhibit. On this record, we cannot say the court abused its discretion by declining to admit the exhibit. *Davis*, 246 Ariz. at 65, ¶ 6.

**¶9**        Exhibit 9 consisted of two reports created by private investigators. Mother sought to have the court admit the second report, but the court sustained Father's hearsay objection. Father later offered the first report from Exhibit 9, but the court refused to admit it, pointing out that Father had objected to admission of the other report.

**¶10**        The superior court did not abuse its discretion in declining to admit the report. Father argues it would have been relevant to Child's best interests, from which we infer that he sought to offer the report for the truth of its contents. The report plainly was hearsay, and Father does not contend otherwise; nor does he argue it was admissible under any exception to the rule against hearsay. *See* Ariz. R. Evid. 801(c), 802; *Davis*, 246 Ariz. at 65, ¶ 6.

## C.    Legal Decision-Making and Parenting Time.

### 1.    General principles.

**¶11**        We review the superior court's determinations about legal decision-making and parenting time for an abuse of discretion. *Engstrom v. McCarthy*, 243 Ariz. 469, 471, ¶ 4 (App. 2018). An abuse of discretion occurs when the court commits legal error, *Arpaio v. Figueroa*, 229 Ariz. 444, 447, ¶ 7 (App. 2012), or "when the record, viewed in the light most favorable to upholding the trial court's decision, is 'devoid of competent evidence to support' the decision," *Little v. Little*, 193 Ariz. 518, 520, ¶ 5 (1999) (quoting *Fought v. Fought*, 94 Ariz. 187, 188 (1963)). "[W]e defer to the court's findings of fact unless they are clearly erroneous." *Engstrom*, 243 Ariz. at 471, ¶ 4.

### 2.    The superior court's best-interests findings.

**¶12**        After assessing the factors enumerated in A.R.S. § 25-403(A) (2019) and A.R.S. § 25-403.01(B) (2019), the superior court must determine legal decision-making and parenting time "in accordance with the best interests of the child." A.R.S. § 25-403(A). In a contested case, § 25-403(B)

states that "the court shall make specific findings on the record about all relevant factors and the reasons" for the court's best-interests determination. Failure to make such findings on the record constitutes an abuse of discretion. *Nold v. Nold*, 232 Ariz. 270, 273, ¶ 11 (App. 2013).

**¶13** Father argues the superior court's findings were "deficient/insufficient." He acknowledges the decree addressed each of the relevant factors, but asserts the court erred by failing to specify how it weighed its various findings. We disagree. Although the court did not explicitly state its conclusion as to each factor, the court cited specific evidence relevant to certain factors and pointed out the absence of credible evidence as to other factors or the irrelevance of the remaining factors.

**¶14** Contrary to Father's contention, § 25-403(B) does not require the superior court to state whether or how each given factor weighs in favor of a specific ruling on legal decision-making or parenting time. Father cites *Owen v. Blackhawk*, 206 Ariz. 418 (App. 2003), but there, unlike in this case, we were unable to assess whether the superior court focused unduly on one factor to the exclusion of others. *Id.* at 669-70, 671, ¶¶ 8, 12. Here, the court made findings on each relevant factor, and, as shown below, we can determine the weight the court gave each factor. *Nold*, 232 Ariz. at 273, ¶ 11.

### 3. Legal decision-making.

**¶15** To begin with, the evidence amply supported the superior court's decision to order sole legal decision-making based on its finding that "the parents have not demonstrated an ability to make joint legal decisions for the child." *See* A.R.S. § 25-403.01(B)(3) (ability of parents to cooperate in making decisions). Among other evidence the court cited, there were allegations of mutual domestic violence between the parents in April 2014.

**¶16** Under § 25-403.01(B)(1), (2), in deciding competing requests for legal decision-making authority, the court may consider whether one of the parents has acted unreasonably or has been "influenced by an issue not related to the child's best interests" in failing to agree about decision-making. In considering that factor, the court recounted that Father admitted at trial that he had shut off the electricity at the home in which Mother was staying with Child because Mother had failed to comply with his request to change the name on the account, and that he would do so again under the same circumstances. Father argues the court erred by considering the electricity issue because it was not relevant, but the court did not abuse its discretion under the circumstances. Further, the court

noted that the parents lived in different states, and, as Mother testified, Father had a history of not timely responding to issues concerning Child while he was away for work.

**¶17**　　　　Addressing § 25-403(A)(2) (child's relationship with siblings "and any other person who may significantly affect the child's best interests"), the court expressed concern that Father does not afford Child the same care he gives to his other children. It found "a strong distinction" between how Father provides for Child and how he provides for his other children. The record supports this distinction: Father testified he lives with and provides for his other children; meanwhile, Father had seen Child only "six or seven times" since Child and Mother moved to Arizona, and for "no more than a day" each time.

**¶18**　　　　Addressing § 25-403(A)(5) ("mental and physical health of all individuals involved"), the court found that "Father may be in need of anger management or Domestic Violence counseling," based on testimony by both parents about "past events in which Father was either exerting or accuse[d] of exerting control and or anger with Mother and Father's past wives." Mother also testified that, when Father was upset with her, he would try to limit her sources of financial support.

**¶19**　　　　Father argues the court erred by disregarding the opinion of the best-interests attorney that "Mother has shown unreasonable distrust and acrimony" toward Father, which he argues weighed against Mother under § 25-403(A)(6) (which parent is more likely to allow child to have contact with the other). Father also argues the court disregarded other evidence that Mother effectively put up roadblocks to keep him from Child.

**¶20**　　　　It is not this court's role, however, to reweigh the evidence. *See Lehn v. Al-Thanayyan*, 246 Ariz. 277, 284, ¶ 20 (App. 2019). Because reasonable evidence supports the court's findings, it did not abuse its discretion in awarding Mother sole legal decision-making.

### 4.　　Parenting time.

**¶21**　　　　Under A.R.S. § 25-403.02(B) (2019), the superior court must adopt a parenting plan that is "[c]onsistent with the child's best interests in § 25-403" and "maximizes [each parent's] respective parenting time." The court makes this determination based on its assessment of the factors set out in § 25-403(A). Here, the court ordered that Mother would be Child's primary residential parent and granted Father one weekend a month of visitation in his home state. The court also made Father solely responsible for the transportation expenses of those visits.

**¶22** Father first seems to contest the court's order to the extent that it endorses or presumes that the parents will "remain separate in parenting." Contrary to Father's contention, however, given the evidence of conflict between the parties, the court did not err by declining to order "co-parenting."

**¶23** Otherwise, Father acknowledges the court granted him "essentially everything" he wanted with respect to parenting time, except that he argues that monthly visits will impose a greater financial burden on him than if the court had granted him two or three "large visits, plus holidays." Father argues that because of travel expenses, the result of the ruling will be that he either will "fail to exercise his regular visitation, or fail to comply with child support obligations."

**¶24** Father, however, offered no evidence to show that a handful of visits a year with a three-year-old child are the substantial equivalent of monthly visits when it comes to maintaining a healthy parenting relationship. Thus, we cannot say the court abused its discretion by awarding Father one weekend per month of visitation in his home state and requiring him to bear all the associated travel costs. *Engstrom*, 243 Ariz. at 471, ¶ 4.

**D. Past Child Support.**

**1. Preliminary issues.**

**¶25** Father does not challenge the superior court's award of child support going forward from the date of the decree, but argues the court erred by ordering back child support of $11,336 for the period of January 6, 2016 through March 1, 2017 (roughly $810 a month).

**¶26** As an initial matter, Father argues the court did not have "jurisdiction to hear the issue of final orders on child support" because the matter should have been decided by "the IV-D court." But the "IV-D court" is not a distinct court from the superior court. It is a division of the superior court, usually presided over by a commissioner, that rules on child support involving a parent who receives public assistance. *See* A.R.S. §§ 25-502(A) (2019) (superior court has "original jurisdiction in proceedings . . . to establish, enforce or modify" any child-support order); 12-298(A), (C) (2019) (superior court appoints "commissioners . . . to provide for the expeditious establishment . . . of support orders"); *see also* A.R.S. §§ 25-328 (2019), -509 (2019), 46-295 (2019) and -407 (2019) (collectively establishing a process by which State may intervene in a child-support matter involving family receiving public assistance; commissioner decides issue after the superior

court has bifurcated the issue from a dissolution proceeding).  Therefore, if the IV-D court had jurisdiction, the family court did too.

**¶27**　　　　Father next argues he had no notice before the dissolution hearing that past support would be at issue, and thus did not know he needed to present evidence of his payment of past support.  The record does not support his contention.

**¶28**　　　　In January 2016, the parties entered, and the court later adopted as an order, a Rule 69 agreement requiring Father to pay Mother a specified amount each month until September 2017.  After Mother moved to enforce the agreement as a temporary support order, the court entered a separate temporary order on child support in February 2017 but stated the validity of the agreement would be resolved at trial.

**¶29**　　　　As the dissolution trial approached, Mother listed the enforcement of the parties' Rule 69 agreement as an issue in her pretrial statement.  More significantly for this purpose, Father's pretrial statement noted that he would seek "retroactive modification of his child support obligation already ordered."  Finally, Father does not point to any evidence of payments he made that he failed to offer because he did not know past support would be at issue at the dissolution trial.

## 2.　　Amount of past support.

**¶30**　　　　Father also raises several arguments challenging the substance of the superior court's determination of his past child-support obligation for January 6, 2016 through March 1, 2017.  The Arizona Child Support Guidelines, A.R.S. § 25-320 app. (2019) ("Guidelines"), instruct the superior court how to determine child support.  The court may award retroactive child support "if the court deems [such] support appropriate" and may consider any "temporary or voluntary support that has been paid." A.R.S. § 25-320(B) (2019).  "[T]he amount resulting from application of [the Guidelines] shall be the amount of child support ordered," unless a deviation, as specified under the Guidelines, is warranted because strict application would be "inappropriate or unjust."  A.R.S. § 25-320 app. § 3. "We review child support awards for abuse of discretion. . . .  We accept the court's factual findings unless clearly erroneous but review de novo the court's conclusions of law and interpretation of the . . . Guidelines." *Sherman v. Sherman*, 241 Ariz. 110, 112-13, ¶ 9 (App. 2016).

**¶31**　　　　Father first argues the superior court abused its discretion by failing to deviate from the Guidelines to account for the expense of his "regular monthly visit" with Child.  But he cites no evidence to support the

premise of that contention, which is that before entry of the dissolution decree, he incurred expenses associated with regular monthly visits with Child.

**¶32** Father next argues the court failed to credit him under the Guidelines with expenses associated with his two other children, with whom he lives. The Guidelines state that "[a]n amount *may* be deducted from the gross income of a parent for support of . . . children . . . not covered by a court order." A.R.S. § 25-320 app. § 6(D) (emphasis added). The evidence supported the court's finding that Father made significantly more in income than Mother; moreover, Father testified his girlfriend also provided support for his other children. On this evidence, we cannot say the court abused its discretion when it chose not to take into account the expenses Father incurred in caring for his other children. *See Sherman*, 241 Ariz. at 112-13, ¶ 9.

**¶33** Father also argues the superior court failed to make findings on the parents' income, as the Guidelines required. *See* A.R.S. § 25-320 app. § 22. But the court did make those findings on its Child Support Worksheet, which the court "incorporate[d] and adopt[ed] as its findings," as the Guidelines permit. *Id.* On the worksheet, the court found Father earned $62,500 a year, roughly equal to $5,208 per month, and attributed income to Mother of $21,840 a year, or $1,820 per month, equal to fulltime employment paid at Arizona's minimum wage. *See* A.R.S. § 23-363(A) (2019).[2]

**¶34** Father further argues the court abused its discretion in calculating the parties' incomes. As discussed above, Father failed to submit an updated AFI for trial, and the court explicitly rejected his Exhibit 27 as unreliable evidence of his income. Father now points to paystubs in evidence and argues those showed his income. Mother argued the paystubs did not reflect all of Father's income, and, in the absence of a current AFI or Father's most recent tax return, the court was not obligated to accept Father's contention that they did. This is particularly true because the record contained evidence that Father's income had fluctuated over recent years. Transcripts of Father's tax returns in evidence showed his income was $62,565 in 2011, $69,540 in 2012, $85,393 in 2013, $37,350 in 2014 and $47,585 in 2015. And in a child-support worksheet Father submitted in connection with the February 2017 hearing, he claimed $60,000 in annual

---

[2] Mother's AFI stated she only earned $525.91 per month, but she does not challenge the court's decision to attribute minimum wage income to her. A.R.S. § 25-320 app. § 5(E).

income ($5,000 a month). Based on this record, we cannot say the court abused its discretion in estimating Father's income during the period at issue. *See Sherman*, 241 Ariz. at 112-13, ¶ 9.

**¶35** Regarding Mother's income, Father argues the court erred by failing to find her income was $41,372.38. In support, he cites Exhibit 65, Mother's 2017 W-2, but that document designated $21,890.63 of Mother's 2017 income as "Nontaxable combat pay." Internal Revenue Service, Publication 3 Armed Forces' Tax Guide at *9 (2018); *see also* 26 U.S.C. § 112 (2019). Mother testified she was deployed from July 2017 to January 2018, that deployment is not a regular occurrence and that she does not want to be redeployed. Given Mother's testimony that she was not deployed during the period at issue for purposes of the court's past child-support calculation (January 6, 2016 through March 1, 2017), the court did not abuse its discretion in declining to take the combat pay into account in determining Mother's income. *See Sherman*, 241 Ariz. at 112-13, ¶ 9.

**¶36** Father contends the court otherwise abused its discretion by failing to attribute income greater than minimum wage to Mother. The Guidelines permit the court to decline to attribute income to a parent when the parent is earning less than his or her full capacity. A.R.S. § 25-320 app. § 5(E). For example, the court may choose not to attribute income when "[a] parent is engaged in reasonable career or occupational training to establish basic skills or reasonably calculated to enhance earning capacity." Guidelines § 5(E)(2). Here, Mother testified she was pursuing occupational training because her current qualifications did not allow her to secure a position. Based on that testimony, the court had a valid reason not to attribute additional income to Mother.

**¶37** Father also argues the superior court abused its discretion when it granted Mother undue credit for what she paid for health insurance for Child during 2016. The Guidelines state the court must add the cost of a child's insurance coverage to the total child-support obligation, but "only the amount of the insurance cost attributable to the child[]." A.R.S. § 25-320 app. § 9(A).

**¶38** Mother's health insurance covered Mother, Father, Child and one of Father's other children, and Mother testified she paid a lump-sum amount to insure all family members other than herself, regardless of their number. As Father argues, under the Guidelines, the court in this situation should credit the parent with having paid only one-third the price of the "family plan" (because Child was one of three additional family members covered by the plan). *See id*. Any error the court made on this issue was

harmless, however. Mother testified her insurance plan did not allow her to remove Father and his child until the dissolution became effective. Under these circumstances, if the court had chosen to credit Mother for child-support purposes with only one-third of the cost of the family plan, it could have ordered Father to make an equalization payment to Mother to account for the other two-thirds as a post-petition payment by her of insurance on Father's behalf. *Cf. Bobrow v. Bobrow*, 241 Ariz. 592, 596-97, ¶ 20 (App. 2017).

**¶39** Father also argues the court abused its discretion because it did not credit him with having paid $9,995 in child support before February 2017, a payment he asserts Mother acknowledged at the dissolution trial. We disagree with Father's contention that his payment of that sum must be credited to him as child support. Contrary to his contention, Mother did not testify the payment was child support; she testified Father characterized it as child support. As she explained it, Father told her the money "was for child support" (i.e., not spousal maintenance) when the parties were disputing the enforceability of their Rule 69 agreement.

**¶40** Father finally argues the court also erred by failing to credit him with child-support payments withheld from his paychecks. As evidence, however, Father points to paystubs showing withholdings no earlier than June 2017; he cites no evidence to support his contention that amounts were withheld from his paychecks during the period of January 6, 2016 through March 1, 2017, the period encompassed by the court's past-support ruling.

## E.    Attorney's Fees.

**¶41** Father argues the court abused its discretion by awarding attorney's fees to Mother and by failing to address his request for attorney's fees. Mother sought $13,604 in fees, all of it incurred before the dissolution hearing; the court awarded her $2,000. "We review an award of attorney's fees for an abuse of discretion." *Murray v. Murray*, 239 Ariz. 174, 179, ¶ 20 (App. 2016). "We will not reverse such an award if there is any reasonable basis for it." *In re Marriage of Gibbs*, 227 Ariz. 403, 410, ¶ 20 (App. 2011) (quotation omitted). Under § 25-324(A) (2019), a court may award attorney's fees "after considering the financial resources of both parties and the reasonableness of the positions each party has taken throughout the proceedings." A court may award attorney's fees solely on the basis of a disparity of financial resources. *See Myrick v. Maloney*, 235 Ariz. 491, 494, ¶ 9 (App. 2014).

**¶42**        The decree shows the superior court considered both statutory factors.  The court found Father had "considerably more resources" than Mother, and thus a "substantial disparity of financial resources" existed between the parties.  The court also found Father had acted unreasonably, citing his failure to comply with the Parent Information Program and failure to pay child support, which required Mother to go to court to enforce that obligation.  Although Father contends the court improperly disregarded unreasonable positions taken by Mother, on this record, the court did not abuse its discretion.  *See Murray*, 239 Ariz. at 179, ¶ 20; *Myrick*, 235 Ariz. at 494, ¶ 9.  Finally, although Father argues the court did not address his request for fees, the decree expressly denied "any affirmative relief . . . that is not expressly granted above."

## CONCLUSION

**¶43**        For the foregoing reasons, we affirm the decree and the award of fees.



AMY M. WOOD • Clerk of the Court
FILED:  AA