IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

———————————————

*In re* the Marriage of:

JEREMY MICHAEL GISH, *Petitioner/Appellee,*

*v.*

JENNIFER ANN GREYSON, *Respondent/Appellant.*

No. 1 CA-CV 21-0472 FC
FILED 6-28-2022

———————————————

Appeal from the Superior Court in Maricopa County
No. FC2017-093448
The Honorable Andrew J. Russell, Judge
The Honorable Rodrick J. Coffey, Judge

**AFFIRMED IN PART, VACATED IN PART, REMANDED**

———————————————

COUNSEL

Rowley Long & Simmons PLLC, Mesa
By Scott R. Rowley
*Counsel for Petitioner/Appellee*

Alexander R. Arpad, Phoenix
*Counsel for Respondent/Appellant*

———————————————

**OPINION**

Presiding Judge Paul J. McMurdie delivered the Court's opinion, in which
Vice Chief Judge David B. Gass and Judge Angela K. Paton joined.

**M c M U R D I E**, Judge:

¶1 Jennifer Ann Greyson ("Mother") appeals from the superior court's order awarding her nearly all parenting time but awarding Jeremy Michael Gish ("Father") sole legal decision-making authority over their child. Mother argues that the parenting order is not authorized by statute and is not in the child's best interests. She also maintains that the 2021 Parenting Order and the later order appointing a court-ordered behavioral interventionist ("COBI") unlawfully delegated the court's authority to the behavioral therapists. And she claims that the COBI order improperly modified the parenting order in violation of A.R.S. § 25-411. Finally, she asserts that the court erred by requiring her to pay for the therapeutic interventionist ("TI") and the COBI, and requests that we accept special action jurisdiction over a contempt finding.

¶2 We hold that the superior court is statutorily permitted to award to one parent most of the parenting time and the other parent sole legal decision-making if it determines it is in the child's best interests. We also hold that the court may not delegate its authority to assess a child's best interests or adjust parenting time to a behavioral professional, including, but not limited to, a TI or a COBI, as its orders did here. The court also erred here by not determining whether Mother and Father could pay for those professionals. We, therefore, vacate the 2021 Parenting Order in part, vacate the order appointing a COBI, and remand to the superior court for further proceedings consistent with this opinion. We decline special action jurisdiction over the court's contempt finding.

## FACTS AND PROCEDURAL BACKGROUND

¶3 Mother and Father are parents to Griffin,[1] who has been diagnosed with autism spectrum disorder. Their parenting relationship over the years has been highly contentious, with various misconduct allegations levied by each against the other. The court's and the behavioral professionals' perception of those allegations has shifted over time, leading to the 2021 rulings now at issue.

¶4 Father filed for divorce in 2017, and the court entered the dissolution decree in early 2018. In the decree, the court found that Mother had taken unreasonable positions throughout the litigation, refused to

---

[1] To protect the child's identity, we refer to him by a pseudonym.

allow Father to have parenting time, made unsubstantiated child abuse allegations against Father, sought to rescind the parties' Rule 69 agreement without justification, filed multiple baseless pretrial motions, and requested voluminous records from Father that she received but did not review. Still, the court adopted the parties' Rule 69 agreement, in which they agreed to exercise joint legal decision-making with an equal parenting schedule. *See Gish v. Greyson*, 1 CA-CV 18-0258 FC, 2020 WL 6852555 (Ariz. App., June 30, 2021).

¶5            Seven months later, Mother petitioned to modify legal decision-making and parenting time. *See* A.R.S. § 25-411(A) (A petition may be filed less than one year after entry of the parenting order if there is reason to believe the child's present environment may seriously endanger the child's health.). Mother alleged that Griffin had been diagnosed with post-traumatic stress disorder ("PTSD") and hospitalized twice for suicidal ideations due to fear and trauma from Father's abuse. She alleged that Griffin stated he "would rather jump off a bridge than go to [Father's] house," and he would rather die than see Father. At the hearing on the petition, the court admitted a hospital discharge report in which Griffin claimed that Father had shown him pictures of abused children and mocked and humiliated him. Father admitted that he once spanked Griffin and put him in the shower with his clothes on.

¶6            After considering the evidence, the court issued a post-decree parenting order in August 2019 ("2019 Parenting Order"). The court recognized that "[t]he parties have a very strained relationship" and "[t]hey do not cooperate well at all in co-parenting the child." The court also considered Mother's history of "taking unreasonable positions" and "making unsubstantiated allegations." It acknowledged that Griffin's autism might cause him to react differently to Father's discipline than children without autism and that Mother may have improperly influenced him. The court noted that it had to make its best-interests findings "without having a clear answer to [the] central question" of whether Griffin's suicidal ideations arose out of Father's mistreatment, Mother's influence, or a combination of both.

¶7            The court weighed the best-interests factors under A.R.S. §§ 25-403 and -403.01. Despite questioning the parents' ability to engage in cooperative decision-making, the court determined it was in Griffin's best interests that Mother and Father continue with joint legal decision-making, with Mother having the final say on issues for which the parents could not agree. As a result, the court awarded Mother most of the parenting time. It granted Father supervised parenting time as directed by the TI until she

determined Griffin was ready to have unsupervised time with Father. The court ordered the parties to follow the TI's recommendations to gradually increase Father's parenting time until she found it appropriate to return to an equal parenting schedule.

¶8            The parties worked with the TI for several months, and in December 2019, the TI submitted her report to the court. She stated that Griffin had begun visiting Father unsupervised and staying overnight, despite recently telling her that he was not ready for unsupervised visits. The increase in Father's parenting time coincided with Mother's new employment, leading the TI to believe that Mother may have had "much more influence over [Griffin's] opinions about parenting time with Father than [Mother] originally let on." The TI also noted that Father claimed Mother had canceled "three or four" out of eight therapy sessions. This led to the concern that Mother only supported Father's relationship with Griffin when it benefitted her.

¶9            The TI recommended that the parents continue to work toward equal, unsupervised parenting time and that Griffin continue individual and family therapy. But the TI expressed "grave concerns" that Mother had undue influence over Griffin's perception of Father. She suggested the court consider sanctioning Mother if she were to restrict Father's parenting time or interfere with Griffin's therapy. Without conducting a hearing on the recommendations, the court adopted them.

¶10            Only two months later, the TI reported that Griffin no longer felt safe with Father and refused all contact with him. Griffin informed the TI that Father pressured him to agree to unsupervised parenting time. He also claimed that Father forced him to perform manual labor in Father's motorcycle shop and mocked him when he could not move heavy motorcycles. Griffin told the TI that Father did not make him take his prescribed mental health medication. The TI reported that she was "at a loss about how to move forward with this case." She was concerned that Father's dishonesty, recklessness, and irresponsibility were ingrained, and that Mother easily influenced Griffin. She expressed doubt about resolving "the high conflict situation" considering "the minimal progress that [had] been made."

¶11            In March 2020, Father petitioned to modify parenting time and legal decision-making under A.R.S. § 25-411(A) because Mother refused to comply with the 2019 Parenting Order. Father alleged that Mother had once again influenced Griffin, as Mother claimed that Griffin no longer wanted parenting time with him. Father stated that the TI's

4

"grave concern" had been fully realized, and the issues the TI predicted were now occurring. He claimed Mother stopped paying the TI despite owing her $2500, leading the TI to end communication with the parties. He contended that Mother refused to participate in co-parenting therapy and began scheduling other therapy sessions only at her home. He also alleged that Mother transferred Griffin's therapy and medication management to a provider to accommodate her and Griffin's needs, telling Father he did "not get a say as to where or when [Griffin's] individual therapy takes place." He argued that Mother had willfully violated the 2019 Parenting Order and requested that the court grant him sole legal decision-making and designate him the primary residential parent.

¶12 The TI asked the court to release her from her appointment as the parents now owed over $3000 for her services and because Mother claimed the TI was "retraumatizing her." The court declined to release the TI. In her August 2020 report, the TI questioned Father's ability to parent without supervision after he appeared to be under the influence, refused a hair follicle test, and tested positive for marijuana. She also had concerns about Father's honesty. She listed a series of lies Father had told her, including his claim that Mother had failed to take Griffin to multiple therapy sessions when it was the therapist that canceled or rescheduled. But the TI also believed Mother strongly influenced Griffin's negative perception of Father. The TI recommended that Father's parenting time be supervised until Griffin felt safe in his care and urged the court to sanction Mother if she interfered with Griffin's therapy or refused to facilitate visits between Father and Griffin. In September 2020, the TI reported that she had continued trying to encourage supervised visitation "to no avail."

¶13 Still awaiting the court's ruling on his modification petition, Father petitioned the court to find Mother in contempt for willfully disobeying the 2019 Parenting Order, claiming that Mother's refusal to work with the TI had "completely sabotaged the entire process." He alleged that Mother prohibited him from having any parenting time or contact with Griffin over the previous seven months. He also claimed that Mother terminated Griffin's therapy sessions unilaterally.

¶14 In April 2021, the court held an evidentiary hearing and ruled on Father's petitions ("2021 Parenting Order"), the first of the rulings at issue on appeal. The court recognized "this case [as] one of the most challenging and contentious matters" in family court, restated the factual history, and reiterated its concerns with both parties' credibility. The court noted that "[a]lthough the parties [were] not in a better position than they were in when the Court issued the [2019 Parenting] Order," modification

was now warranted because the parties abruptly began exercising equal parenting time before Mother unilaterally cut off Father's contact with Griffin, disregarded the TI's recommendations, and violated the 2019 Parenting Order.

¶15    The court found it "abundantly evident that the parties do not cooperate well with each other in legal decision-making," yet expressed "serious reservations about awarding either parent sole legal decision-making or final say legal decision-making." The court found that Mother had abused her final-say authority, but Father had "not demonstrated that he can consistently make appropriate decisions" for Griffin. The court ultimately felt "forced to choose between granting legal decision-making authority to one of them despite the potential negative ramifications of awarding either parent sole or final say legal decision-making authority." Having granted Mother final-say authority previously, the court found she had "misused that authority" and would "continue to do so if she [had] the ability to do so," and "the family's situation did not improve when she had such authority." As a result, the court awarded Father sole legal decision-making authority.

¶16    As for parenting time, the court ordered first that "the child shall reside with Mother at all times except for the times specifically designated for Father's parenting time." Second, the court granted Father supervised parenting time "as directed by [the TI]" until the TI determined unsupervised parenting time was appropriate. It then directed the parties to "follow the recommendations of [the TI]" to increase Father's parenting time as "therapeutically appropriate" until they reached equal parenting time. Third, the court ordered each parent to pay half the TI's fees and emphasized that Mother must also pay the past fees she still owed. Fourth, considering the TI's previous request for release, the court ordered that if the TI were unwilling to keep working with the parties, "Father shall select a new therapeutic interventionist," and the parties would each pay for half the fees. Fifth, the court ordered Mother to not interfere with Griffin's therapy or Father's parenting time and then found Mother in contempt for willfully violating the 2019 Parenting Order and awarded Father $5000 in attorney's fees and costs. Mother appealed.

¶17    While Mother's appeal was pending, Father moved to appoint a COBI to replace the TI. Father alleged Mother continued interfering with his parenting time and had not permitted a single visit nearly three months after the court issued the 2021 Parenting Order. Citing the order, Father argued that because the TI was no longer willing to work with the parties, he could "select a new therapeutic interventionist" to help

6

the family achieve the goal of "returning to an equal parenting time schedule."

¶18 The court granted the motion over Mother's objection and appointed a COBI. The ruling began by stating that "[t]he Court has entered findings that both parties are fit to parent. Therefore, parental fitness is not an identified or accepted impediment to implementation of the order." The court explained that the advice and guidance of a COBI would help the court bring about the goals of the 2021 Parenting Order. The court appointed the COBI Father requested and ordered each parent to pay half the fees. Mother amended her notice of appeal to include the COBI order.

## JURISDICTION

¶19 We have an independent obligation to determine whether we have appellate jurisdiction and must dismiss those matters over which we lack jurisdiction. *Dabrowski v. Bartlett*, 246 Ariz. 504, 511, ¶ 13 (App. 2019). This court's appellate jurisdiction "is defined, and limited, by the Legislature." *Brumett v. MGA Home Healthcare, L.L.C.*, 240 Ariz. 420, 426, ¶ 4 (App. 2016). "Whether this court has appellate jurisdiction turns on compliance with (1) the applicable statute on which appellate jurisdiction is based and (2) any applicable procedural rules." *Yee v. Yee*, 251 Ariz. 71, 74–75, ¶ 8 (App. 2021).

¶20 We have jurisdiction over the parenting time aspects of the 2021 Parenting Order under A.R.S. § 12-2101(A)(2). But we do not have appellate jurisdiction over the contempt ruling in the 2021 Parenting Order (awarding Father $5000 in attorney's fees as a sanction for Mother's willful failure to abide by the 2019 Parenting Order). *In re Marriage of Chapman*, 251 Ariz. 40, 42, ¶ 8 (App. 2021) ("well-established rule in Arizona that civil contempt adjudications are not appealable"). Mother acknowledges that contempt orders are generally not appealable, but she requests we accept special action jurisdiction and reverse the fee award if her challenge to the order succeeds. Although we vacate certain portions of the 2021 Parenting Order, *see infra* ¶¶ 42–50, we vacate for reasons unrelated to the court's contempt finding. Thus, we decline to review the court's contempt finding and the corresponding sanctions.

¶21 Mother's challenge to the COBI order presents a jurisdictional quandary because the parties dispute whether the COBI order enforced (Father's position) or modified (Mother's position) the terms of the 2021 Parenting Order. And the scope of the superior court's jurisdiction to enter the order, and ultimately our appellate jurisdiction to review it, varies

depending on whether the COBI order reflected enforcement or modification.

¶22        Generally, filing a notice of appeal divests the trial court of jurisdiction to proceed other than to issue orders to further the appeal and address matters unrelated to the appeal. *In re Flores and Martinez*, 231 Ariz. 18, 21, ¶ 10 (App. 2012). But our supreme court acknowledged that the rule divesting the trial court of jurisdiction upon filing a notice of appeal is not absolute, and there are "many equally well established exceptions." *Cont'l Cas. Co. v. Indus. Comm'n,* 111 Ariz. 291, 294 (1974) (quoting *Castillo v. Indus. Comm'n,* 21 Ariz. App. 465, 467 (1974)). As applied, the superior court did not have jurisdiction to enter the COBI order unless it fit within an exception to the general rule that Mother's appeal divested that court of jurisdiction.

¶23        One such exception is that the superior court retains jurisdiction pending an appeal to take such action as might be necessary to "enforce its previously entered judgment." *Henderson v. Henderson*, 241 Ariz. 580, 589, ¶ 27 (App. 2017). Another circumstance where the superior court retains jurisdiction even though an appeal is pending is resolving a modification petition under A.R.S. § 25-411(A). The modification statute authorizes petitioning for parenting modification one year after the previous order or within a year if the child's life or health is at risk. A modification petition must be based on new evidence arising after the entry of the parenting order and be in the child's best interests. *See Backstrand v. Backstrand*, 250 Ariz. 339, 343, ¶ 14 (App. 2020) (The burden is on the petitioner to show the conditions and circumstances have changed after the parenting order to justify a modification.).

¶24        In this case, the parties dispute whether the COBI order modified the 2021 Parenting Order. After the court issued the 2021 Parenting Order, Father cited that order allowing him to choose the next TI and moved the court to affirm his choice of a COBI. Father claims that the COBI order enforced the previous order. Mother argues that the order appointing a COBI improperly modified the 2021 Parenting Order, noting the substantive differences between a TI and a COBI.

¶25        "Every power that the superior court exercises in a dissolution proceeding must find its source in the supporting statutory framework." *Fenn v. Fenn*, 174 Ariz. 84, 87 (App. 1993). Once a judgment about parenting has been entered, it may be enforced under Rule 91.5 and A.R.S. § 25-414 or modified under Rule 91.3 and A.R.S. § 25-411. Determining whether a parent has met or violated the requirements of a

parenting order is an enforcement action under Rule 91.5. Changing the parenting terms in a judgment requires the parties to comply with the modification statute and Rule 91.3. *Backstrand*, 250 Ariz. at 343, ¶ 14.

¶26     The court appointed Father's chosen COBI "[i]n accordance with ARS Section 25-405(B) . . . to advise and assist with the implementation of the court-ordered parenting plan." But A.R.S. § 25-405(B) "applies only when an issue regarding legal decision-making authority or parenting time is pending before the court." *Paul E. v. Courtney F.*, 246 Ariz. 388, 397, ¶ 37 (2019). The court had resolved all such issues in the 2021 Parenting Order, and Mother appealed that order before the superior court ruled on Father's request for the appointment of a COBI.

¶27     If the COBI order modified the 2021 Parenting Order, it violated A.R.S. § 25-411(A) because "[a] person shall not make a motion to modify a legal decision-making or parenting time decree earlier than one year after its date, unless the court permits it to be made on the basis of affidavits that there is reason to believe the child's present environment may seriously endanger" the child's health. The 2021 Parenting Order was dated April 30, 2021. Father filed his motion less than three months later and did not assert that Griffin's environment seriously endangered his physical, mental, moral, or emotional health. And the court did not make a § 25-411 finding to that effect. *See* A.R.S. § 25-403(B) ("[T]he court shall make specific findings on the record about all relevant factors and the reasons for which the decision is in the best interests of the child."). If the COBI order violated A.R.S. § 25-411, it is a voidable order, and we would have appellate jurisdiction to vacate it. A.R.S. § 12-2101(A)(2); *see also State v. Serrano*, 234 Ariz. 491, 496, ¶ 15 (App. 2014) (A party may appeal from an invalid order, and the court of appeals can "review and vacate such orders on appeal.").

¶28     If the COBI order was an enforcement order based on Father's assertion that Mother was not following the 2021 Parenting Order, it might constitute a contempt finding and sanction. *See* A.R.S. § 25-414. Although some enforcement orders are appealable as "special order[s] made after final judgment," A.R.S. § 12-2101(A)(2), contempt orders are not, meaning we would lack appellate jurisdiction. *See Chapman*, 251 Ariz. at 42, ¶ 8.

¶29     We decline to wade further through this quagmire because doing so is unnecessary for our resolution of the case. For the reasons stated below, the 2021 Parenting Order was unenforceable, and the COBI order suffers the same problems. Thus, without deciding the precise nature of the COBI order, we accept special action jurisdiction to review it. A.R.S.

§ 12-120.21(A)(4) (court of appeals has "[j]urisdiction to hear and determine petitions for special actions brought pursuant to the rules of procedure for special actions, without regard to its appellate jurisdiction"); *Brionna J. v. D.C.S.*, 247 Ariz. 346, 350, ¶ 13 (App. 2019).

## DISCUSSION

**¶30**        Mother argues (1) a court may not grant sole legal decision-making authority to one parent and sole parenting time to the other, (2) if the domestic relation statutes authorize such an arrangement, the court's decision to do so here was not in the child's best interests, (3) the court erred by requiring Mother to pay for the TI and the COBI, (4) the court erred by delegating its authority to Father and the TI, and (5) the attorney's fees contempt award should be vacated.

**¶31**        We will accept the court's factual findings as true unless they are clearly erroneous, but we review its conclusions of law *de novo*. *Birnstihl v. Birnstihl*, 243 Ariz. 588, 590–91, ¶ 8 (App. 2018). We also review questions of statutory interpretation *de novo*. *Nicaise v. Sundaram*, 245 Ariz. 566, 567, ¶ 6 (2019). We review an award of legal decision-making and parenting time for an abuse of discretion. *Oleson v. Daniel*, 251 Ariz. 25, 29, ¶ 14 (App. 2021); *DeLuna v. Petitto*, 247 Ariz. 420, 423, ¶ 9 (App. 2019).

**A.     Arizona Law Allows a Court to Award Sole Legal Decision-Making Authority to One Parent and Most of the Parenting Time to the Other.**

**¶32**        Mother argues that our domestic relations statutes do not authorize a court to grant sole legal decision-making authority to one parent and exclusive parenting time to the other. To support her argument, Mother cites A.R.S. § 25-403.01(D), which provides that a "parent who is not granted sole or joint legal decision-making is entitled to reasonable parenting time to ensure that the minor child has substantial, frequent, meaningful and continuing contact with the parent," unless parenting time would endanger the child's health. She argues that the legislature has thus explicitly provided for an arrangement in which a parent receives no legal decision-making authority yet is still entitled to parenting time, but the statutes include no provision for the converse scenario — one where a parent gets no parenting time but is entitled to legal decision-making authority. And under the negative-implication canon, she argues, "a statute that expressly authorizes one thing [should be] interpreted to exclude other things not mentioned." *See* Antonin Scalia & Brian A. Garner, *Reading Law:*

*The Interpretation of Legal Texts* 107 (2012) ("The expression of one thing implies the exclusion of others.").

¶33 But the negative-implication canon must be applied cautiously, depending heavily on context. Scalia & Garner, *supra*, at 107. The doctrine can only be used correctly when the legislature's specification "can reasonably be thought to be an expression of *all* that shares in the grant or prohibition involved." *Id.*

¶34 In the context of the legal decision-making and parenting time statute, it is inappropriate to apply the negative-implication canon to A.R.S. § 25-403.01(D). The statutory scheme does not provide a series of legal decision-making and parenting time combinations from which a court must choose. *Cf., e.g., Powers v. Carpenter*, 203 Ariz. 116, 118, ¶ 10 (2002) (Where items are "expressly listed in series in a statute, we presume the legislature intended to exclude items of the same class that are not listed."). Instead, the statutes make clear that "[t]he court shall determine legal decision-making and parenting time . . . in accordance with the best interests of the child." A.R.S. §§ 25-403(A), -403.1(B). Section 25-403.01(D) simply "ensure[s] that the minor child has substantial, frequent, meaningful and continuing contact with [each] parent" if that contact aligns with the child's best interests. *See Smith v. Smith*, ___ Ariz. ___, ___, ¶¶ 14–15, 508 P.3d. 793, 796 (App. 2022). We do not interpret A.R.S. § 25-403.01(D) to implicitly prohibit a court from awarding sole legal decision-making authority to a parent who receives little to no parenting time. If such an arrangement is in the child's best interests, a court is within its discretion to order it.

**B.      The Court Did Not Abuse Its Discretion by Awarding Father No Parenting Time While Granting Him Sole Legal Decision-Making Authority.**

¶35 Mother argues that it was not in Griffin's best interests to award Father no or supervised parenting time but to grant Father sole legal decision-making authority. She suggests that the court "was so focused on trying to reform the parents" that it "lost sight of [Griffin's] best interest."

¶36 When making its best-interests findings, the court noted that Mother and Griffin have a good relationship, but Mother's improper influence over Griffin has strained his relationship with Father. The court added that "[i]mproving that relationship will be very challenging and will require[] consistent therapy for the child and the parents." Mother describes these findings as "[t]he core of the Family Court's rationale" and argues

that the court "essentially used the grant of sole legal decision-making to force a reunification." She also contends that the court prioritized "endless and unlimited therapy to make [Griffin] accept spending time with Father over [Griffin's] feelings of safety and ability to thrive."

¶37     We disagree with Mother's conclusions that the court improperly forced a reunification or prioritized the father-son relationship over Griffin's safety. Without evidence to the contrary, it is in a child's best interests to have "substantial, frequent, meaningful and continuing parenting time with both parents." A.R.S. § 25-103(B)(1). And the parenting plan does not put Griffin's safety at risk because Griffin continues to live with Mother. The court did not abuse its discretion by implementing a parenting plan to reestablish a healthy relationship between Father and Griffin.

¶38     We also disagree with Mother's argument that the court's findings about Father and Griffin's strained relationship were the "core" of the court's rationale. These findings were made under A.R.S. § 25-403(A)(1), which requires the court to consider "[t]he past, present and potential future relationship between the parent and the child." The isolated findings provide only some of the court's reasoning, as it considered other statutory factors when determining Griffin's best interests.

¶39     When it awarded Father sole legal decision-making authority, the court provided its reasoning:

> The Court previously granted Mother final say legal decision-making authority and she misused that authority. The Court has good reason to believe that she will continue to do so if she has the ability to do so. And, the family's situation did not improve when she had such authority. Given all that has happened in the past 20 months, the Court believes that a change is necessary at this point.

The court highlighted the difficulty of the situation by reiterating that "the parties do not cooperate well with each other in legal decision-making for the child." Yet, it had "serious reservations about awarding either parent sole legal decision-making or final say legal decision-making." It recognized that its past orders, first granting joint legal decision-making and then awarding Mother final-say authority, had not improved the situation. Under these circumstances, the court did not abuse its discretion by awarding Father sole legal decision-making authority.

¶40        Mother argues that the court erred by refusing to consider Griffin's wishes. A court must consider the child's wishes "[i]f the child is of suitable age and maturity." A.R.S. § 25-403(A)(4). The court found that Griffin was "not old enough or mature enough for the Court to consider his wishes." Griffin was 12 years old, and the TI had repeatedly reported that Griffin was unduly susceptible to Mother's influence. The court's finding was not clearly erroneous, and we will accept it as true. *See Birnstihl*, 243 Ariz. at 590, ¶ 8. Once established that the child is not of suitable age and maturity, it is not an abuse of discretion to disregard the child's wishes. *See* A.R.S. § 25-403(A)(4).

¶41        Mother also argues that the court failed to make reasonable accommodations for Griffin under the Americans with Disabilities Act. She contends that Griffin's autism "is not a basis to refuse to listen to [him]." An autism diagnosis is not a *per se* basis for excluding a child's desires from consideration. Because the court did not use Griffin's autism in isolation to justify disregarding the child's wishes, it did not abuse its discretion.

## C.     The Court Erred by Ordering Mother to Pay Half the Cost of the TI Without Putting Her Ability to Pay on the Record.

¶42        Mother claims she "simply cannot afford to finance Father's constant need for therapeutic interventions." Rule 95(b) authorizes a court to order "parties to engage in behavioral or mental health services, including counseling and therapeutic interventions." But when ordering such services, the court "must determine on the record whether the parties have the ability to pay for services as well as allocate the costs of those services." Ariz. R. Fam. Law P. 95(a). Here, the court allocated the costs of the services but failed to make an on-the-record determination that either Mother or Father had the resources to cover the cost. On remand, the court must determine Mother and Father's ability to pay and allocate expenses based on their respective capacity.

## D.     The Court Erred by Delegating Its Authority to the TI and Father.

¶43        In the 2021 Parenting Order, the court ordered

> that Father shall continue to have supervised parenting time as directed by [the TI] until she determines that the child is again ready to have unsupervised parenting time with Father. The parties shall follow the recommendations of [the TI] regarding Father's parenting time with the goal of gradually increasing his parenting time and eventually returning to the

equal parenting time schedule once it is therapeutically appropriate for them to do so.

The court also ordered that if the TI were unwilling to continue her work with the family, "Father shall select a new therapeutic interventionist," with each party responsible for half of the new TI's fees.

¶44 Mother argues that the court unlawfully delegated its authority to determine legal decision-making and parenting time. She adds that the court's delegation was also troubling because it would "allow[] Father to dictate the TI services that would determine Father's parenting time." We agree.

¶45 On its face, the court's order allowing Father to choose the next TI violates Rule 95. As noted above, Rule 95 permits the court to order parties to engage in behavioral or mental health services and share the cost of those services. First, the court's order denied Mother due process by granting Father exclusive choice of a new TI without input from Mother. *See Curtis v. Richardson*, 212 Ariz. 308, 312, ¶ 16 (App. 2006) (Due process requires notice and an opportunity to be heard.). Second, it also required Mother to pay half the fees of Father's chosen TI regardless of the cost and without the requisite on-the-record finding of ability to pay. *See* Rule 95(a). Unless the parties stipulate to a particular TI or the paying parent is responsible for the entire cost, the court cannot delegate its selection decision to one party.

¶46 Likewise, the court erred by delegating its exclusive authority to determine parenting time to behavioral professionals in the 2021 Parenting Order and the COBI order. A "court may seek the advice of professional personnel" or "order an investigation and report concerning legal decision-making or parenting time arrangements for the child." A.R.S. §§ 25-405(B), -406(A). But the court "can neither delegate a judicial decision to an expert . . . nor abdicate its responsibility to exercise independent judgment. The best interests of the child . . . are for the [family] court alone to decide." *Nold v. Nold*, 232 Ariz. 270, 274, ¶ 14 (App. 2013) (quoting *DePasquale v. Sup. Ct. (Thrasher)*, 181 Ariz. 333, 336 (App. 1995)); *see also* A.R.S. § 25-403(A).

¶47 In the 2021 Parenting Order, the court ordered that Griffin must reside with Mother "except for the times specifically designated for Father's parenting time," then stated that Father will "have supervised parenting time *as directed by* [the TI] until *she* determines that the child is

again ready to have unsupervised parenting time with Father." (Emphasis added.) These determinations are not for the TI to make.

¶48 Whether a recalcitrant or dangerous parent has overcome an issue requiring supervised parenting time is for the court to decide after affording due process to the other parent. Due process requires "notice and an opportunity to be heard at a meaningful time and in a meaningful manner." *Curtis*, 212 Ariz. at 312, ¶ 16; *see also Volk v. Brame*, 235 Ariz. 462, 466, ¶ 14 (App. 2014) ("[D]ue process requires the court to allow parties a reasonable opportunity to present testimony whenever resolution of a material contested issue hinges on credibility."). These due process and statutory concerns do not mean that a court is prohibited from establishing milestones for a parent to receive additional or unsupervised parenting time in a parenting order. But unless the milestones are self-effectuating, the court, not a behavioral health professional, must determine whether a requirement has been met.[2]

¶49 The 2021 Parenting Order and COBI order improperly delegated the court's authority. Although the court could properly accept the behavioral professional's advice, it was prohibited from abdicating its responsibility to independently determine when Griffin would be ready for unsupervised or increased parenting time. Without an express agreement by the parties, *see* Ariz. R. Fam. Law P. 74, only a court may evaluate when parenting time is appropriate because only the court may assess parenting time in accordance with the child's best interests. *See Nold*, 232 Ariz. at 274, ¶ 14; A.R.S § 25-403(A).

¶50 We note that the legislature has specifically provided a mechanism for continued supervision of a case after the entry of a parenting order. *See* A.R.S. § 25-410(B). Neither the 2021 Parenting Order nor COBI order complied with the legislative directive that post-order supervision be conducted by a "local social service agency" with fees "approved by the supreme court." *See id.*

---

[2] A self-effectuating milestone could be, for example, the child's reaching a certain age or beginning school. In that case, the requirement is not in dispute when reached. But a disputable milestone, such as one dependent on a third party's assessment or compliance with drug testing, is subject to court review before implementation. *See generally* Helen R. Davis, *Self-Executing Modifications of Custody Orders: Are They Legal?*, 34 J. Am. Acad. Matrim. Law. 53 (2021).

## ATTORNEY'S FEES AND COSTS

**¶51**        Both parties request an award of attorney's fees on appeal under A.R.S. § 25-324. We decline to award attorney's fees to either party at our discretion. As the prevailing party on appeal, Mother is awarded her costs upon compliance with Arizona Rule of Civil Appellate Procedure 21. *See* A.R.S. § 12-341.

## CONCLUSION

**¶52**        We vacate the order appointing a COBI and the portion of the 2021 Parenting Order that delegated the court's authority and required payment for a TI. Accordingly, we remand for further proceedings consistent with this opinion.

